Isaac BROWN et al.

v.

The TRAVELERS INSURANCE COMPANY.

No. 91–193–Appeal.

Supreme Court of Rhode Island.

July 10, 1992.

Richard H. Burrows, Robert D. Parrillo, Hanson, Curran, Parks & Whitman, Providence, for plaintiff.

Thomas M. Dickinson, Law Office of Kevin M. Cain, Providence, for defendants.

OPINION

KELLEHER, Justice.

This matter comes before this court on an appeal brought by the defendant, the Travelers Insurance Company (Travelers), from a Superior Court order granting summary judgment in favor of the plaintiffs,

Isaac Brown (Brown) and Metropolitan Property and Liability Insurance Company (Metropolitan). We affirm in part and reverse in part.

According to an agreed statement of facts, on March 23, 1988, Brown was test-driving a vehicle owned by Hurd Buick, a GMC dealership (Hurd), when he was involved in a collision with a vehicle owned and operated by Tracy M. Reed, an uninsured motorist. A salesman for Hurd, Donald Pelligrino, was a passenger in the vehicle at the time of the collision and was injured. He has brought suit in Providence Superior Court against Brown and Hurd, seeking compensation for his injuries.

At the time of the collision, Brown was covered under an automobile liability policy issued by Metropolitan. Hurd's liability insurance for the vehicles it owns and garages is provided by Travelers. In a declaratory judgment action, Metropolitan contends that Travelers is primarily liable for damages resulting from this incident. Travelers, on the other hand, asserts that Brown's own policy with Metropolitan affords coverage and that its policy with Hurd provides coverage to Hurd's customers only in the limited situation in which a customer lacks personal coverage. The trial justice granted Metropolitan's motion for summary judgment and denied that of Travelers, concluding that the garage policy of Travelers controlled this particular question of liability.

■ To initiate this discussion, we are reminded that an insurance policy is to be treated as a contract between the insured and the insurer. *Employers' Fire Insurance Co. v. Baker*, 119 R.I. 734, 741, 383 A.2d 1005, 1008 (1978) (citing *Murray v. Remuck*, 108 R.I. 179, 184, 273 A.2d 491, 494 (1971)). This contract should be enforced according to its clear and unambiguous terms. Such terms include the following expressions. "Primary coverage" is provided when an insurer is liable for the risk insured against, regardless of any other available coverage. *See, e.g., Equity Mutual Insurance Co. v. Spring Valley Wholesale Nursery, Inc.*, 747 P.2d 947, 954 (Okla.1987). "Other-insurance" clauses

purport to limit the coverage of a policy if there is another policy or policies protecting the risk insured against. Annot., 76 A.L.R.2d 485, 503 (1961). Insurance parlance typically describes four variations of other-insurance clauses. These are (1) the "pro-rata" clause, which provides that an insurer will pay its share of the loss in proportion to the aggregate liability coverage available for the same risk, (2) the "excess" clause, which provides that an insurer will pay for a loss only after any primary coverage of other available insurance has been exhausted, (3) the "escape" clause, which provides that the insurer is not liable for any and all liability if other coverage is available, and (4) the "excess-escape" clause, a hybrid, which provides that the insurer is liable for the amount of the loss that exceeds the limits of other available insurance and that the insurer is not liable when other available coverage contains limits equal to or in excess of its own limits. *Liberty Mutual Insurance Co. v. Harbor Insurance Co.*, 603 A.2d 300, 301 n.2 (R.I.1992); *Equity Mutual Insurance Co.*, 747 P.2d at 954; *see also* Welch, *Conflicts between "Other Insurance" Clauses in Automobile Liability Insurance Policies*, 20 Hastings L.J. 1292 (1969); Comment, *Concurrent Coverage in Automobile Liability Insurance*, 65 Colum.L.Rev. 319 (1965).

■ In the instant controversy, both policies contain other-insurance clauses by which the respective insurers deny coverage. The Metropolitan policy, issued to Brown, contains an excess clause and reads in pertinent part: "If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over other collectible insurance." In comparison, the Travelers policy issued to Hurd includes an escape clause. This policy defines an insured as follows:

"Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except:

\* \* \* (3) Your customers, if your business is shown in item two of the declarations as an auto dealership. However, if a customer of yours:

(a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance."

Travelers argues that its policy excludes an individual from its definition of an insured if the individual carries any other insurance, regardless of whether the insurance is classified as primary, excess, or contingent. Because Brown is covered by Metropolitan's policy, Travelers contends, it is not liable because Brown is not an insured. Conversely Metropolitan argues that a majority of jurisdictions conclude that an insurer with a policy containing an escape clause is the primary insurer and therefore liable. Thus, Metropolitan argues, Travelers should assume responsibility for the liability in this matter.

This matter of first impression for Rhode Island compels a brief discussion of applicable authority in other jurisdictions. Under the majority view, courts refuse to apply the escape clause of a vehicle owner's policy that states that the driver is not covered if he or she carries other valid and collectible insurance and so courts conclude that a policy containing an escape clause bears primary liability. *See Equity Mutual Insurance Co. v. Spring Valley Wholesale Nursery, Inc.*, 747 P.2d 947 (Okla.1987); *American Home Assurance Co. v. Fish*, 122 N.H. 711, 451 A.2d 358 (1982); *Bertini v. State Farm Mutual Automobile Insurance Co.*, 48 Ill.App.3d 851, 6 Ill.Dec. 435, 362 N.E.2d 1355 (1977); *see also Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163 (3d Cir.1987); Annot., 46 A.L.R.2d 1163 (1956). These jurisdictions reason that the policy providing excess coverage is not considered "other valid and collectible insurance"; excess coverage is not available to the insured until the primary coverage has been exhausted. Consequently the escape clause is not triggered, and the owner's policy must provide primary coverage. *Torruellas v. Hartford Accident Indemnity Co.*, 357 F.Supp. 311, 315 (D.P.R.1972); *see also* 16 *Couch on Insurance* 2d § 62:77 at 543 (rev. ed. 1983).

What could be resolved by a simple application of the majority rule in this matter, however, is complicated by the specific wording of the escape clause in the Travelers policy. This clause refers to other insurance whether "primary, excess or contingent"—language that has been interpreted to transform a simple escape clause into a "super-escape" clause. *Insurance Co. of North America v. Continental Casualty Co.*, 575 F.2d 1070 (3d Cir.1978). Depending upon the jurisdiction, this semantic difference may alter the liability of insurers. Indeed, some courts that otherwise reject the application of the escape clause in fact enforce the super-escape clause, reasoning that the specific exclusionary language of the clause is sufficient to trigger the operation of the escape clause and, in turn, to render the excess insurer primary. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Auto–Owners Insurance Co.*, 331 So.2d 638 (Ala.1976); *but see Protective National Insurance Co. of Omaha v. Bell*, 361 So.2d 1058 (Ala.1978).

Authorities deliberating the conflict between dissimilar clauses are polarized regarding which clause in an insurance contract prevails. Courts have approached the interpretation of conflicting clauses in one of several ways. Recently this court recognized that conflicting policy language "may not be readily resolved by 'word logic.'" *Liberty Mutual Insurance Co.*, 603 A.2d at 302 (quoting *Allstate Insurance Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278, 1284 (5th Cir.1971)). Instead a reviewing court must look to the overall policy's insuring intent as its first

focus of inquiry. 603 A.2d at 302. However, this approach is not useful in this instance, as an escape clause and a super-escape clause have different purposes, and thus their use suggests contradictory insuring intents. *See* Note, *The Dilemma of Concurrent Coverage: Carriers Insurance Co. v. American Policyholders Insurance Co.*, 32 Me.L.Rev. 471, 484 (1980). The specific language of a super-escape clause has been given effect over that of an excess clause by some courts. *Royal–Globe Insurance Companies v. Safeco Insurance Co. of America*, 560 S.W.2d 22 (Ky.Ct.App.1978); *Government Employees Insurance Co. v. Globe Indemnity Co.*, 415 S.W.2d 581 (Ky.Ct.App.1967); *State Farm Mutual Automobile Insurance Co. v. Western Casualty & Surety Co.*, 477 S.W.2d 421 (Mo.1972); *Allstate Insurance Co. v. Shelby Mutual Insurance Co.*, 269 N.C. 341, 152 S.E.2d 436 (1967); *see also Schoenecker v. Haines*, 88 Wis.2d 665, 277 N.W.2d 782 (1979). Other jurisdictions, however, have determined that such specific super-escape language does not mandate a deviation from the majority rule and instead have concluded that in a conflict between a super-escape clause and an excess clause, the policy possessing the super-escape clause is primary. *Insurance Company of North America v. Continental Casualty Co.*, 575 F.2d 1070 (3d Cir.1978); *Protective National Insurance Company of Omaha v. Bell*, 361 So.2d 1058 (Ala. 1978); *Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co.*, 49 Ill.2d 108, 273 N.E.2d 360 (1971). In upholding the majority view in regard to the specific language of a super-escape clause, one court determined that the addition of the terms "whether * * * primary, excess or contingent" failed to alter the meaning of the phrase "other valid insurance," which necessitates a different and opposing result. *Insurance Company of North America*, 575 F.2d at 1073.

Reconciling the various other-insurance clauses in automobile-liability policies has forced some courts to referee the "battle of the draftsmen" waged by insurance companies. *Schoenecker*, 88 Wis.2d at 673, 277 N.W.2d at 786. However, other jurisdic-

tions have resolved this conflict in what we believe is a more effective manner, that is, by requiring both insurers to share the loss on a pro-rata basis. *See* Annot., 69 A.L.R.2d 1122 (1960) (pro-rata sharing a common solution when involving two excess clauses). Recently one court has held that an excess clause in one policy and an escape clause in another were mutually repugnant and so determined that the two insurers should share damages proportionally. *Dette v. Covington Motors, Inc.*, 486 So.2d 805 (La. Ct.App.1986); *see also Graves v. Traders & General Insurance Co.*, 200 So.2d 67 (La. Ct.App.1967), *aff'd*, 252 La. 709, 214 So.2d 116 (1968); *State Farm Mutual Automobile Insurance Co. v. The Travelers Insurance Co.*, 184 So.2d 750 (La. Ct.App.1966); *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 594 S.W.2d 950 (Mo.Ct.App.1980); *Hardware Dealers Mutual Fire Insurance Co. v. Farmers Insurance Exchange*, 444 S.W.2d 583 (Tex. 1969).

An examination of both other-insurance clauses in the parties' policies indicates that each document attempts to disclaim liability. We observe that the excess clause contained in Metropolitan's policy effectively nullifies the escape clause included by the Travelers policy. The language of each respective insurer, in our opinion, effectuates a total forfeiture of coverage toward Brown, a result that cannot be permitted to occur. Although we do not believe that either clause, taken together, is "mutually repugnant," we do believe that ruling in full for either Metropolitan or Travelers would lend more ammunition to the battle of the drafters. We do not wish to encourage the complication of insurance legerdemain at the expense of the policy holders' money or the courts' time. Consequently we believe that this conflict between an excess clause in one policy and an escape clause in another is more readily and efficiently resolved by requiring both insurers to afford pro-rata liability.

Accordingly the appeal is denied in part and sustained in part, the judgment appealed from is affirmed in part and reversed in

part, and the case is remanded to the Superior Court.