William **HINDSON** et al.

v.

**ALLSTATE INSURANCE CO.** et al.

No. 95–610–Appeal.

Supreme Court of Rhode Island.

May 7, 1997.

Neil P. Philbin, Peace Dale, Robyn K. Factor, for Plaintiff.

Michael J. Reed, Jr., Patricia Buckley, C. Russell Bengtson, Providence, for Defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, and FLANDERS, JJ.

## OPINION

FLANDERS, Justice.

This is an insurance-coverage dispute involving insurers whose policies contain underinsured-motorist provisions with conflicting "other insurance" clauses. Rather than struggle to untie the Gordian Knot[1] of coverage created by these "other-insurance" clauses, we endeavor yet again to cut it by adopting a rule calling for the pro-rata apportionment of liability among the various insurers providing uninsured/underinsured-motorist coverage according to the limits of the respective policies involved.[2]

### Facts and Travel of the Case

On November 10, 1991, plaintiff William Hindson[3] was a passenger in a motor vehicle operated by Joseph B. Lukowicz (Lukowicz) when it was struck from behind by a motor vehicle operated by Michael Casino (Casino). At the time of the accident the Casino vehicle carried liability insurance for $15,000 per person/$30,000 per accident—less than the amount of damages plaintiff claimed he sustained as a result of the accident. The plaintiff notified the insurer of the Lukowicz vehicle, Pennsylvania General Insurance Company (Penn General),[4] as well as his own personal automobile-insurance carrier, Allstate Insurance Company (Allstate), of his intention to file an underinsured-motorist claim under both of these policies. Both policies contained substantial uninsured/underinsured-motorist coverage: Penn General insuring for a maximum of $300,000 and Allstate providing coverage for $100,000 per person/$300,000 per accident.

However, both insurers' policies purported to limit their primary liability if other insurance was available to provide underinsured-motorist coverage. The Penn General policy stated that "[i]f there is other applicable similar insurance we will pay only *our share* of the loss. *Our share is the proportion that our limit of liability bears to the total of all applicable limits.*" (Emphases added.) Relying on this language, Penn General asserted that both insurers should be required to share coverage for this loss on a pro-rata basis. In comparison plaintiff's Allstate policy provided that "[i]f the insured person was in, on, getting into or out of a vehicle which is insured for this coverage under another policy, this coverage will be *excess.*" (Emphasis added.) Thus Allstate claims that it is not primarily liable to plaintiff because its policy is "excess" and not "other applicable similar

1. The story of the Gordian Knot dates from the time of Alexander the Great: "Gordius, a peasant, being chosen king of Phrygia, dedicated his wagon to Jupiter, and fastened the yoke to a beam with a rope of bark so ingeniously that no one could untie it. Alexander was told that 'whoever undid the knot would reign over the whole East'. 'Well then,' said the conqueror, 'it is thus I perform the task,' and, so saying, he cut the knot in twain with his sword." Ivor H. Evans, *Brewer's Dictionary of Phrase and Fable* 490–91 (14th ed. 1989).

2. In *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971), and *Employers' Fire Insurance Co. v. Baker*, 119 R.I. 734, 383 A.2d 1005 (1978), we invalidated other-insurance clauses involving competing "excess-escape" and/or "pro-rata" clauses as repugnant

to the statutes requiring uninsured/underinsured-motorist coverage (unless specifically rejected by the insured). Most recently in *Brown v. Travelers Insurance Co.*, 610 A.2d 127, 130 (R.I.1992), we nullified conflicting "escape" and "excess" provisions and instead required the insurers to prorate their coverage of the loss or claim according to the amounts of insurance that each of them provided.

3. Although Sally Hindson, William's wife, is also named as a plaintiff, for convenience we refer throughout this opinion to William alone as plaintiff.

4. The plaintiff was covered as an insured person under the Penn General policy, which defined "[i]nsured" as including "[a]ny other person 'occupying' 'your covered auto.' "

insurance" as described in the Penn General policy. In support of this argument Allstate cites *Employers Mutual Casualty Co. v. Martin*, 671 A.2d 798, 801 (R.I.1996), where we found that a disparity in the amount of coverage afforded by two different policies was sufficient to preclude any holding that the two policies were "similar" for the purposes of a clause providing for the termination of coverage if the insured obtained other "similar" insurance on a covered automobile. But we do not believe *Martin* is applicable because this case does not involve the alleged substitution of a second policy providing underinsured-motorist coverage with the intention to cancel the first policy.

When these two insurance companies were unable to agree on how their respective other-insurance clauses should be interpreted, plaintiff filed an action for a declaratory judgment, seeking to have these insurers pay for his covered losses on a pro-rata basis. Arguing that our prior precedents favor plaintiff's pro-rata coverage position, Penn General filed a motion for summary judgment. Allstate promptly objected and responded with its own cross-motion for summary judgment. The motion justice granted Allstate's motion and declared the Penn General policy to be primary and Allstate's policy to be excess. Penn General appeals from this judgment. For the reasons explained below, we reverse and hold that in these circumstances pro-rata coverage is the pro bono publico solution to this type of conflicting other-insurance-clause dispute.

### Analysis

Under their respective policies, both Penn General and Allstate would be primarily liable to plaintiff if either one was the lone insurer providing coverage. However, when as here other insurance is available to compensate for an insured's loss, they both seek to limit their liability. Because other underinsured-motorist insurance is available to compensate plaintiff, Penn General contends that it should pay only a proportionate or pro-rata share of the loss based on the ratio between the amounts of insurance provided under the insurers' individual policies. Allstate on the other hand maintains that because other such insurance is available, it is

only responsible for the excess, after the limits on the Penn General policy have been exhausted. In considering how other courts have dealt with such competing other-insurance clauses, two distinct lines of authority emerge. Because this precise issue is one of first impression in Rhode Island, we briefly discuss these separate lines of authority.

The majority position is the one espoused by Allstate. Courts adopting this approach hold "that where an excess clause and a prorata clause appear in concurrently effective automobile liability policies, the prorata clause is disregarded and full effect is given to the excess clause, making the prorata policy the primary insurance." 16 *Couch on Insurance* 2d § 62:72 at 530 (rev. ed. 1983); *see also Farmers Insurance Exchange v. Hartford Casualty Insurance Co.*, 907 F.Supp. 234, 238 (S.D.Miss.1995) ("[t]he majority rule, by far, is that 'excess insurance is considered to prevail over pro rata—that is, it is not other valid and collectible insurance within a pro rata clause' ") (*quoting* 8A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 4909.25 at 409 (rev. ed. 1981)).

The courts holding that excess clauses trump pro-rata clauses follow different paths to reach this conclusion. One theory is that when an insurance policy with a pro-rata clause conflicts with a policy with an excess clause, the pro-rata policy has no other insurance to prorate with and it therefore becomes the primary coverage. *See, e.g., Rutgers Casualty Insurance Co. v. State Farm Mutual Insurance Co.*, 234 N.J.Super. 202, 560 A.2d 722, 725 (1989); *see also* 8A Appleman, *Insurance Law and Practice* at § 4909.25. Other jurisdictions look to the vehicle owner to provide primary coverage when the nonowner's policy contains the excess clause. *E.g., Grinnell Mutual Reinsurance Co. v. Globe American Casualty Co.*, 426 N.W.2d 635, 637 (Iowa 1988) (" 'where an "excess insurance" clause pertains to nonownership coverage, the conclusion is generally reached—no matter how various the reasoning adopted in support of it in the different cases may be—that the policy issued to the owner of the vehicle is the "primary" policy, and the company issuing it is

liable up to the limits of the policy without apportionment'"); *see also* 7A Am.Jur.2d *Automobile Insurance* § 434 at 83–84 (1980). *But see* 16 *Couch on Insurance* 2d § 62:74 at 538 (noting that "apportionment has been denied where the vehicle owner's policy contained an excess insurance clause and the nonowner's policy contained a pro rata clause, with the result that the latter's insurer was compelled to assume the entire loss").

We have sampled and surveyed the stew of justifications relied upon by those courts that allow excess other-insurance clauses to convert policies with pro-rata other-insurance clauses into the primary coverage.[5] However, we believe that the reasoning of the Supreme Court of Oregon in *Lamb–Weston, Inc. v. Oregon Automobile Insurance Co.,* 219 Or. 110, 341 P.2d 110(Or.), *mod.* and *reh'g denied,* 219 Or. 110, 346 P.2d 643 (1959), provides the better solution to these conflicting other-insurance-clause cases. The *Lamb–Weston* court rejected the multifarious approaches followed by the majority of jurisdictions to subjugate pro-rata clauses to excess clauses and concluded that any conflicts between such other-insurance clauses should be resolved by construing them as mutually repugnant and therefore unenforceable. 341 P.2d at 119. Under this approach "the loss is then 'prorated between the insurers up to the respective policy limits' " according to the respective amounts of coverage provided. *Horace Mann Insurance Co. v. Colonial Penn Insurance Co.,* 777 P.2d 1162, 1164 (Alaska 1989).

As the Oregon court points out in *Lamb–Weston,* it could well be argued that some effect should be given to the terms of each policy's other-insurance clause. If we adopted this methodology, then Penn General would pay its pro-rata share of plaintiff's loss and Allstate would pay the excess. But ultimately following this course leads to the same result as the pure pro-rata tack taken by the Oregon court in *Lamb–Weston.* On the one hand, we wish to avoid using an arbitrary, "rock, paper, scissors" approach in comparing other-insurance clauses and then determining which policy or policies should provide primary coverage. On the other hand, we also seek to call at least a temporary halt to the incessant " 'battle of the draftsmen' " waged by, between, and among the various insurance companies in these other-insurance-clause cases. *See Brown v. Travelers Insurance Co.,* 610 A.2d 127, 130 (R.I.1992). Inevitably the front-line casualties of such clashes are the insureds. Thus in this case, despite the passage of five-and-one-half years since the November 10, 1991 automobile accident, the entrenched insurers continue to exchange legal gunfire over the fine print in their other-insurance clauses—only pausing, periodically, to glare at one another warily from their respective parapets—while plaintiff still has not recovered for his insured losses.

Accordingly, when as here an insurance policy would provide primary coverage to an insured if it were the only applicable policy, we are of the opinion that the coverage responsibilities of all such insurers should be shared on a pro-rata basis despite the existence of conflicting other-insurance clauses. Our sincere wish is that this denouement brings a belated but welcome armistice to those combat-weary draftsmen still fighting the good fight over which policy's other-insurance clause boasts the better boil-

---

**5.** Cases from other jurisdictions reveal a veritable legal potpourri of rationales for determining which insurer should be considered primary. *See, e.g., Transamerican Insurance Co. v. Austin Farm Center, Inc.,* 354 N.W.2d 503, 508 (Minn. Ct.App.1984) (considering three factors in determining " 'which policy had the primary purpose of insuring for the risk that occurred, and which policy was the more incidental' "). Other cases, though now primarily of historical significance, also illustrate how various courts have resolved other-insurance clause disputes. For instance, some courts have allocated liability on the basis of which policy predated the other, *see, e.g., Automobile Ins. Co. of Hartford, Conn. v. Spring-* field Dyeing Co., 109 F.2d 533, 537 (3d Cir.1940), others upon the basis of which policy provided the more specific coverage, *see, e.g., Trinity Universal Ins. Co. v. General Accident, Fire & Life Assur. Corp.,* 138 Ohio St. 488, 35 N.E.2d 836, 838 (1941), and still others on which policy covered the primary tortfeasor, *see, e.g., American Automobile Ins. Co. v. Penn Mutual Indemnity Co.,* 161 F.2d 62, 63 (3d Cir.1947), or on which policy charged the higher premiums in relation to the total premiums paid by the insured, *see, e.g., Nationwide Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 209 F.Supp. 83, 89–90 (N.D.W.Va.1962).

erplate. And our fervent hope is that our cutting of the Gordian Knot will free ensnared insureds like this plaintiff from the coils of such disputes. But even if our wish remains unrequited and our hope is soon dashed (that is, the battling draftsmen rearm anon and retie the Gordian Knot), we will still abide here, with our sword poised and ever at the ready to cut the Knot again.

### Conclusion

Penn General's appeal is sustained, the judgment of the Superior Court is reversed, and the papers in this case are remanded to the Superior Court so that a judgment may be entered that is consistent with this opinion.