Robert BUTTIE

v.

NORFOLK & DEDHAM MUTUAL
FIRE INSURANCE CO. et al.

No. 2007–368–M.P.

Supreme Court of Rhode Island.

May 12, 2010.

Neil P. Philbin, Esq., Peace Dale, for Plaintiff.

Eva Marie Mancuso, Esq., Providence, for Defendants, Raymond & Joan Cataldo.

Michael R. DeLuca, Esq., Providence, for Defendant Travelers Insurance Company.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

This case comes before us on a writ of certiorari seeking review of a Superior Court order confirming an arbitration award. In his decision, the arbitrator awarded damages for personal injuries suffered by the plaintiff, Robert Buttie, and the defendants, Raymond and Joan Cataldo, in an automobile accident. The arbitrator also apportioned the damages between two insurance carriers that provided uninsured/underinsured motorist (UM) coverage to one or more of the parties. For the reasons hereinafter set forth, we vacate the order of the Superior Court confirming the arbitrator's award.

## I

### Facts and Procedural History

On August 12, 1996, a motor vehicle owned by Mr. Buttie, in which he and the Cataldos were passengers, was involved in a collision with an underinsured motorist. After the tortfeasor's liability insurance was exhausted, plaintiff and the Cataldos sought UM benefits from plaintiff's insurance carrier, and the Cataldos also sought UM benefits under a policy issued to Raymond Cataldo. The plaintiff's vehicle was insured by defendant Norfolk & Dedham Mutual Fire Insurance Company (Norfolk) with UM coverage up to $300,000.[1] Raymond Cataldo's policy was with defendant Travelers Insurance Company (Travelers), and he had UM coverage up to $100,000.

---

1. Norfolk was discharged from the case upon depositing its policy limits with the Registry

of the Court.

The parties entered into binding arbitration in order to determine the amount of UM benefits to which each was entitled.

The arbitrator concluded that the $400,000 in available coverage was insufficient to cover the parties' total damages. According to the arbitrator, Mr. Buttie sustained $300,000 in damages, Raymond Cataldo sustained $90,000, and Joan Cataldo sustained $65,000. The arbitrator added interest from the date of the accident through the date each individual received payment from the tortfeasor, then subtracted the amount received from the tortfeasor, and finally added additional interest through the date of the arbitration hearing. The arbitrator ultimately found $463,420 in damages for plaintiff, $93,272 in damages for Raymond Cataldo, and $80,146 in damages for Joan Cataldo, for a total of $636,838 among the parties.

The plaintiff does not dispute the arbitrator's findings concerning damages, but contends that the arbitrator erred in the manner in which he apportioned the insurance proceeds. The arbitrator allocated the proceeds such that the Cataldos were given priority under the Norfolk policy. It is undisputed that plaintiff was not covered by the Travelers policy.

The Norfolk and Travelers policies both contain nearly identical "other insurance" clauses which read, in pertinent part, as follows:

> "If there is other applicable * * * insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectable auto insurance * * *."

In interpreting the clause, the arbitrator substituted the name of each policy owner in place of the word "you" in the last sentence of each provision. Read in this manner, the arbitrator determined that the clauses had different meanings and that the Travelers policy called for the Norfolk policy to be primary. Consequently, the arbitrator determined that the clauses were in conflict and that, therefore, the proceeds from each should be distributed pro rata, based upon his interpretation of this Court's precedent, citing *Hindson v. Allstate Insurance Co.*, 694 A.2d 682 (R.I. 1997), *Brown v. Travelers Insurance Co.*, 610 A.2d 127 (R.I.1992) and *Ferreira v. Mello*, 811 A.2d 1175 (R.I.2002).

The arbitrator found that, because Norfolk's coverage accounted for $300,000 of the $400,000 in available coverage, Norfolk should be responsible for 75 percent of the parties' claims ($300,000/$400,000), and that Travelers should be responsible for 25 percent of the Cataldos' claims ($100,000/$400,000). He first awarded the Cataldos the full amount of their damages, giving Raymond Cataldo $69,954 from the Norfolk policy and $23,318 from the Travelers policy, and Joan Cataldo $60,109 from Norfolk and $20,037 from Travelers. The arbitrator then awarded plaintiff the remaining amount under the Norfolk policy—$169,937, or approximately 37 percent of his total damages.

Mr. Buttie filed a motion in Superior Court on February 27, 2006, seeking to vacate, modify, or correct the arbitrator's award. The Cataldos filed an answer on March 24, 2006, in which they requested that the arbitration award be affirmed. Travelers also answered and opposed plaintiff's motion on March 6, 2006. A hearing on the motion was held on April 27, 2006, and the hearing justice thereafter entered an order confirming the arbitration award.

The plaintiff originally filed a notice of appeal on May 2, 2006, but that appeal was

dismissed on procedural grounds on November 14, 2006. He then appealed from the dismissal of his appeal. This Court denied that second appeal "without prejudice, so as to allow the plaintiff to file for a writ of certiorari to review the substantive issues raised in the original appeal from the denial of the motion to vacate the arbitrator's award." Thereafter, on December 7, 2007, plaintiff filed a petition for writ of certiorari, which was granted by this Court on January 17, 2008.

# II

## Standard of Review

 In this jurisdiction, the authority of the Courts "to review an arbitral award is statutorily prescribed and is limited in nature." *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers*, 945 A.2d 339, 344 (R.I. 2008). "[J]udicial reversal of an arbitrator's award solely on the ground of a reviewing court's disagreement with [the arbitrator's] construction of the contract is prohibited." *Council 94, American Federation of State, County, and Municipal Employees AFL–CIO v. State*, 475 A.2d 200, 203 (R.I.1984). An arbitration award may be overturned, however, if the arbitrator manifestly disregarded the law or if the award was irrational. *Aponik v. Lauricella*, 844 A.2d 698, 703 (R.I.2004) (citing *Purvis Systems, Inc. v. American Systems Corp.*, 788 A.2d 1112, 1115 (R.I. 2002)). Further, while an arbitrator's mistake of law is not, of itself, grounds to vacate an award, *Pier House Inn, Inc. v. 421 Corp.*, 812 A.2d 799, 803 (R.I.2002), this Court is obligated by law to "make such orders * * * as the rights of the parties and the ends of justice require." G.L. 1956 § 10–3–19.

# III

## Discussion

### A

### Writ of Certiorari

 As a preliminary matter, Travelers argues that certiorari should not have been granted in this case. Travelers maintains that plaintiff lost his right to appeal because he failed to comply with procedural rules, and that there were no extraordinary circumstances justifying issuance of the writ. Specifically, Travelers asserts that plaintiff did not follow the correct procedure to order a transcript on appeal and compounded his negligence by failing to file a motion to extend the time for transmitting the record.

Travelers asserts that certiorari is *generally* unavailable when a party has had an adequate opportunity to seek appellate review and no extraordinary circumstances exist justifying issuance of the writ. Travelers claims that plaintiff has never given any valid reason for his failure to properly perfect his appeal. Travelers does not assert, however, that certiorari could never be available under its account of plaintiff's alleged procedural errors.

 In support of its argument, Travelers cites a case in which a notice of appeal was not timely filed. However, "a litigant will not be deprived, ipso facto, of his appellate remedy because of his failure to comply with some of the procedures required by the rules once the claim of appeal has been timely filed." *Martin v. Estrella*, 107 R.I. 247, 251, 266 A.2d 41, 45 (1970) (decided under the substantially similar former Rule 73 of the Superior Court Rules of Civil Procedure). Article I, Rule 3(a) of the Supreme Court Rules of Appellate Procedure describes how a party shall take an appeal and further provides that "[f]ailure of an appellant to take any step other than the timely filing of a notice

of appeal or payment of a filing fee * * * does not affect the validity of the appeal, but is ground only for such action as the Supreme Court or trial court deems appropriate, which *may* include dismissal of the appeal." (Emphasis added.) Thus, although Travelers asserts that certiorari is generally unavailable under similar circumstances, it was clearly within this Court's discretion to grant the petition for a writ of certiorari to review the issues raised in plaintiff's original appeal.

### B

### Denial of Plaintiff's Motion to Vacate the Arbitration Award

### 1

### The Norfolk Policy

█ The plaintiff argues that it was "manifestly erroneous and plainly irrational" for the arbitrator to give the Cataldos priority in distributing the coverage available under the Norfolk policy. We find merit in his contention and conclude that it was indeed irrational for the arbitrator to have given the Cataldos preferential treatment under a policy that Mr. Buttie owned and for which Mr. Buttie paid the premiums.

It bears repeating that Mr. Buttie was not the tortfeasor, but was merely a passenger in a vehicle that he himself paid to insure. Underinsured-motorist coverage is, by definition, "[i]nsurance that pays for losses caused by a driver who negligently damages *the insured* but does not have enough liability insurance to cover the damages." Black's Law Dictionary 1561 (8th ed. 2004) (emphasis added). Although it is true that the Cataldos also were insured parties under the terms of the Nor-

folk policy because they were passengers in Mr. Buttie's vehicle, even the Cataldos acknowledge that they had no greater right to the Norfolk coverage than Mr. Buttie.

This Court previously has held that an arbitrator's decision may be overturned if the decision, in essence, rewrites a contract. *See Town of Coventry v. Turco*, 574 A.2d 143, 147 (R.I.1990). This is because while "public policy favors the final resolution of disputes * * * by arbitration, this policy relies on the premise that arbitrators act within their power and authority." *Id.* We have stated specifically that, although arbitrators have "the power and the authority to interpret [a] contract * * * they [do] not have the power and authority to rewrite it." *Id.* With respect to the Norfolk policy at issue in the case at bar, no provision expressly dictates that the Cataldos should have been given priority over the owner of the policy, Mr. Buttie. Thus, by giving the Cataldos priority, the arbitrator essentially rewrote the Norfolk contract to the detriment of the policyholder. We deem it irrational to subordinate the rights of the named insured under the policy to those of the other occupants of the automobile.

Logic and fairness dictate that when multiple individuals suffer damages and those individuals have equal rights under a policy that does not provide sufficient coverage, a pro rata distribution should be accomplished in proportion to each claimant's relative damages. *See* 70 A.L.R.2d 416, 417, § 2[a] (1960); *see also* 12 *Couch on Insurance* § 171:17 (3d ed. 2005). As the Cataldos acknowledge, the arbitrator could have allocated the proceeds in this manner, and doing so would have been appropriate.[2] Such a pro rata allocation of

---

**2.** The Cataldos argue, however, that the issue of an alternative pro-rata distribution is waived because plaintiff did not demand the

proper method of distribution below. The plaintiff, however, points to the irrationality of an obviously inequitable result and claims

the Norfolk policy would result in the following distribution: plaintiff, who sustained $463,420, or approximately 73 percent of the total damages incurred by all three parties, would be entitled to $219,000 of the proceeds of the Norfolk policy (73 percent of $300,000). Raymond Cataldo, who sustained $93,272, or roughly 15 percent of the total damages, would be entitled to $45,000 of the proceeds of the Norfolk policy (15 percent of $300,000). Joan Cataldo, who sustained $80,146, or close to 12 percent of the total damages, would be entitled to $36,000 of the proceeds of the Norfolk policy (12 percent of $300,000). This allocation is not only rational, but fair, and we direct this distribution upon remand pursuant to our "authority to make such orders 'as the rights of the parties and the ends of justice require.'" *Metropolitan Property and Casualty Insurance Co. v. Barry*, 892 A.2d 915, 918 (R.I.2006) (quoting § 10–3–19).

2

**The Travelers Policy**

■ Travelers also contends that, even if this Court determines that plaintiff is entitled to an additional recovery from Norfolk, the portion of the award concerning Travelers' liability to the Cataldos must not be disturbed. Travelers reasons that plaintiff has not sought, and may not seek, to enforce any rights the Cataldos may have under the Travelers policy. Although it is true that plaintiff is not an insured under the Cataldos' policy with Travelers, we find no merit in the argument that plaintiff may not challenge the arbitrator's award in its entirety. Our grant of a writ of certiorari has brought the enforcement of the arbitrator's entire

award under review, and the arbitrator's decision ought to be considered in light of the total economic consequences of that decision. The money awarded to the Cataldos has a direct bearing on the amount of money available to plaintiff. Mr. Buttie has clearly alleged that the arbitrator's apportionment of liability between Norfolk and Travelers caused him injury in fact, the gravamen of standing. *See Bowen v. Mollis*, 945 A.2d 314, 317 (R.I.2008). Further, it is our opinion that the arbitrator's irrationality in distributing the Norfolk policy infected the entire award. We conclude, therefore, that the portion of the arbitrator's award concerning the Cataldos' recovery under the Travelers policy is also properly under review.

■ The Cataldos argue that if we determine Mr. Buttie is entitled to additional sums from the Norfolk policy, the portion of the award involving Travelers' liability to the Cataldos also must be altered "as the rights of the parties and the ends of justice require." Section 10–3–19. As to the $100,000 in coverage that is available only to the Cataldos, the arbitrator determined that Travelers should pay 25 percent of both Raymond and Joan's damages. In other words, Raymond Cataldo, who sustained $93,272 in damages, would be entitled to $23,318 from Travelers (or 25 percent of $93,272). Likewise, Joan Cataldo would receive $20,037 from Travelers (or approximately 25 percent of $80,146). We find that the arbitrator's conclusion in this regard leads to a plainly unjust result.

After receiving the proper portion of the coverage available under the Norfolk policy, the uncompensated portion of the Cataldos' combined claims totals $92,418.[3]

generally that the distribution of the proceeds was improper. The fact that he did not present the exact equation that would create an equitable result is of no moment.

3. These figures will need to be adjusted to reflect additional interest that has accrued since the date of the arbitrator's award.

The Cataldos, however, would receive a total of only $43,354.50 of their $100,000 policy limits if we were to uphold the arbitrator's decision. This would result in a $49,063.50 windfall for Travelers ($92,418 minus $43,354.50), while the Cataldos would be uncompensated for the majority of their injuries.

Further, there is nothing in the "other insurance" clauses, upon which the arbitrator relied, to suggest that Travelers should not be liable for the full amount of their insureds' damages. The clauses state that if there is other applicable similar insurance (in this case the Norfolk policy), each insurance company will pay only their share of the loss, which is the proportion that their "limit of liability bears to the total of all applicable limits" (in Travelers' case, 25%). This language obviously contemplates a situation in which the relevant party or parties are covered by two policies. This case, however, is complicated by the fact that only the Cataldos are covered by both policies—Mr. Buttie was covered by the Norfolk policy only. If all of the relevant parties had been covered by both policies, the arbitrator's basic premise of a pro rata distribution would have been just. However, under the facts of this case, the arbitrator's determination creates an inequitable result and a windfall for Travelers because Travelers did not provide coverage to Mr. Buttie.

Additionally, the "other insurance" clauses go on to state that any insurance provided with respect to a vehicle not owned by the insured "shall be excess over any other *collectable* insurance." (Emphasis added.) Because the Cataldos cannot *collect* the full amount of their damages from Norfolk, they are entitled to recover the remainder of their damages from their own insurance company. A windfall for Travelers would be unjust because the Cataldos paid premiums for $100,000 of UM coverage with the expectation that they would be compensated to the extent of their damages within or up to the policy limits if they were injured by an underinsured motorist.

Given that the Cataldos' uncompensated damages do not exceed their available coverage, it is in the interests of justice that the Cataldos be able to recover the full amount of their damages. Raymond Cataldo, who sustained $93,272 in damages, but who should be paid only $45,000 under the Norfolk policy, is entitled to the remainder of his damages under the Travelers policy, or $48,272. Joan Cataldo, who sustained $80,146 in damages, but who is to be paid only $36,000 under the Norfolk policy, is entitled to the remainder of her damages under the Travelers' policy: $44,146.

As we have vacated the arbitrator's award, § 10–3–19 clearly provides that we shall "make such orders * * * as the rights of the parties and the ends of justice require." Accordingly, we direct the Superior Court to enter an order consistent herewith.

## IV

### Conclusion

In order to avoid an irrational result, the plaintiff and the Cataldos must share the proceeds from the Norfolk policy in proportion to the monetary value of their damages. Further, justice requires that Travelers pay the remainder of their insureds' damages. We remand the papers in the case to the Superior Court for proceedings consistent herewith.

Justice INDEGLIA took no part in the consideration or decision of this petition.

FLAHERTY, J., concurring in part and dissenting in part.

I concur in the majority's holding with respect to the issuance of the writ of certiorari. However, I most respectfully, but nonetheless vigorously, dissent from the majority opinion that the arbitrator's decision should be vacated. As the majority correctly has set forth, our review of an arbitrator's decision is extremely limited; it is certainly among the most stringent standards of review employed by judicial bodies. The majority aptly has said, "the authority of the Courts 'to review an arbitral award is statutorily prescribed and is limited in nature.' *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers*, 945 A.2d 339, 344 (R.I.2008)." Therefore, we will not vacate an arbitrator's award "[a]bsent a manifest disregard of a contractual provision or a completely irrational result." *City of East Providence v. United Steelworkers of America, Local 15509*, 925 A.2d 246, 252 (R.I.2007) (quoting *State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 867 A.2d 823, 828 (R.I.2005)).

I have examined the arbitrator's award and note that this very well respected and experienced arbitrator was faced with a complex and difficult situation in which the damages of the injured parties exceeded the available coverage limits of all the applicable policies, with the added complication that one of the policies covered only two, but not all three, of the occupants of the Buttie vehicle. In his effort to work his way to a just award, the arbitrator was confronted with "uninsured motorist" and "other insurance" provisions in the policies that differed from each other. He also evaluated and construed this Court's decisions in *Hindson v. Allstate Insurance Co.*, 694 A.2d 682 (R.I.1997); *Brown v. Travelers Insurance Co.*, 610 A.2d 127 (R.I.1992), and *Ferreira v. Mello*, 811 A.2d 1175 (R.I. 2002). In the end, the arbitrator issued an award that he believed to be fair, in keeping with the applicable language in the two policies involved, and consistent with this Court's prior holdings. In my opinion, under no circumstances can the arbitrator's award be considered "completely irrational."

The majority also faults the arbitrator for rewriting Buttie's policy with Norfolk. I agree with the majority that although the arbitrator "had the power and the authority to interpret the contract, giving due regard to each provision," he "did not have the power and authority to rewrite it." *Town of Coventry v. Turco*, 574 A.2d 143, 147 (R.I.1990). However, without saying how the policy was "rewritten," the majority merely states that his doing so is further evidence of irrationality. The majority opinion states, "no provision [of the Norfolk policy] expressly dictates that the Cataldos should have been given priority over the owner of the policy." However, in my opinion, the arbitrator did not rewrite the contract language, but rather did the best he could to walk a judicial highwire and construe the typically dense language of two competing insurance policies. *See Town of Coventry*, 574 A.2d at 148–49, 149 (Kelleher, J., dissenting) (remarking that there was "no specific directive in the agreement concerning the particular issue at bar" and, therefore, "that which is not written cannot be rewritten").

When setting forth the standard of review in this case, the majority properly cites the case of *Council 94, American Federation of State, County, and Municipal Employees AFL–CIO v. State*, 475 A.2d 200, 203 (R.I.1984), for the proposition that "judicial reversal of an arbitrator's award solely on the ground of a reviewing court's disagreement with [the

arbitrator's] construction of the contract is prohibited." But, with enormous respect for my learned and conscientious colleagues in the majority, I believe that this is precisely what they have done. The majority opines, "We find that the arbitrator's conclusion in this regard leads to a plainly unjust result." It then substitutes the arbitrator's award with an award of its own, which it deems to be more fair. The difficulty with this approach, of course, is that fairness, or lack of it, is not the standard of review to be applied in this case.

Arbitration is a contractual process in which the parties agree to remove themselves from judicial determination and instead present their cases to an impartial finder of fact and law of their own choosing. *See North Providence School Committee*, 945 A.2d at 347 ("We review arbitral awards under an exceptionally deferential standard as a means of ensuring that parties may benefit from arbitration as a relatively informal and expedient alternative to litigation in the court system."). The awards that flow from this process cannot be reversed for errors of fact or law and should only be disturbed in the narrowest of circumstances. *Aponik v. Lauricella,* 844 A.2d 698, 703 (R.I.2004) ("[T]he role of the judiciary in the arbitration process is 'extremely limited.'") (quoting *Purvis Systems, Inc. v. American Systems Corp.,* 788 A.2d 1112, 1114 (R.I.2002)); *Romano v. Allstate Insurance Co.,* 458 A.2d 339, 341–42 (R.I.1983) ("arbitrators are free to determine the facts before them without having their award become subject to judicial revision"); *Jacinto v. Egan,* 120 R.I. 907, 911, 391 A.2d 1173, 1175 (1978) ("The fact that the arbitrator misconstrued the contract or the law is no ground for striking down his award."). We may or may not agree about how the arbitrator, who, after all, was selected by the parties, performed his duties in this case. But, in my view, his decision should not be vacated because there simply is no justification to do so under G.L. 1956 § 10–3–12; the award is not irrational nor is it occasioned by a manifest disregard of the law on behalf of the arbitrator. *See Pier House Inn, Inc. v. 421 Corp.,* 812 A.2d 799, 802 (R.I.2002). Therefore, I most respectfully dissent from the majority's holding, and I would affirm the judgment of the Superior Court.