EMPIRE FIRE AND MARINE
INSURANCE COMPANIES

v.

CITIZENS INSURANCE COMPANY
OF AMERICA/HANOVER
INSURANCE.

No. 2011–33–Appeal.

Supreme Court of Rhode Island.

May 7, 2012.

---

David O. de Abreu, Esq., for Plaintiff.

Scott M. Carroll, Esq., for Defendant.

Present: SUTTELL, C.J.,
FLAHERTY, ROBINSON, and
INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The defendant, Citizens Insurance Company of America/Hanover Insurance (Citizens), appeals from a grant of summary judgment in favor of the plaintiff, Empire Fire and Marine Insurance Companies (Empire). Citizens contends that the hearing justice erred in granting summary judgment in favor of Empire for the complete reimbursement of attorneys' fees expended by Empire in defending against a civil suit resulting from an accident caused by a driver insured by Citizens. Citizens argues that Empire was entitled only to a *pro-rata* apportionment of defense costs. This case came before the Supreme Court for oral argument, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions

and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

This insurance-coverage dispute arises from a tragic accident involving the operation of a leased vehicle. That vehicle, a 2001 BMW 325IT (2001 BMW) owned by BMW Financial Services NA, LLC (BMW Financial), was leased to MCB Productions LTD (MCB), as lessee, by Inskip Autocenter (Inskip), as lessor, in a February 10, 2001 lease agreement.[1] Marilyn Brownell executed the lease agreement as authorized agent and owner of MCB. The lease agreement required the lessee to obtain "primary insurance during the [l]ease [t]erm," from February 10, 2001, to February 10, 2004, and to name the lessor "as an additional insured and loss payee" in any such policy. Insurance coverage thereafter was obtained from Citizens.

Citizens provided a personal automobile insurance policy, which covered the 2001 BMW and listed Ms. Brownell and her husband as insureds and BMW Financial as an additional insured and loss payee. The policy provided: "We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages." The policy also explicitly listed BMW Financial as an additional insured lessor, and stated:

> "Any liability and any required no-fault coverages afforded by this policy for

---

1. Prior to this lease agreement, Inskip had entered into a distribution-dealer agreement with BMW Financial for the 2001 BMW 325IT.

'your leased auto' also apply to the lessor named in this endorsement as an additional insured. This insurance is subject to the following additional provisions:

"1. We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

"(a) you or any 'family member', or

"(b) any other person except the lessor or any employee or agent of the lessor using 'your leased auto'.

"2. 'Your leased auto' means:

"(a) an auto shown in the Declarations or in this endorsement which you lease for a continuous period of at least six months under a written agreement which requires you to provide primary insurance for the lessor, and

"(b) any substitute or replacement auto furnished by the lessor named in this endorsement."

Further, in a provision entitled "OTHER INSURANCE" ("other insurance"), the policy provided:

"If there is other applicable insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance, including physical damage insurance provided under this or any other policy." [2]

Also at issue in this case is a separate business auto insurance policy issued by Empire to BMW Financial. This policy provided contingent, excess, and interim liability coverage to BMW Financial for vehicles that BMW Financial had leased to others, including the 2001 BMW. Empire's policy contained an "other insurance" provision, which specified: "It is agreed that the insurance afforded by this policy and Coverage Form is excess over any other collectible insurance whether primary, excess, contingent or self insurance, unless such insurance is specifically written to apply in excess of this policy."

On March 26, 2003, Ms. Brownell was operating the 2001 BMW while under the influence of alcohol when she struck and seriously injured a pedestrian. The pedestrian and her family sued Ms. Brownell, as well as BMW Financial, for damages suffered as a result of the accident. The case eventually settled, with Citizens and Empire paying their policy limits, and the remaining amount being paid by BMW Financial's excess-insurance carrier, AIG. Empire expended approximately $98,955.92 in legal expenses defending BMW Financial in the civil action. Citizens reimbursed Empire in the amount of $23,060.62; [3] however, it refused to provide Empire with any further reimbursement. As a result, on September 19, 2007, Empire filed a complaint for declaratory judgment seeking a determination that Citizens was liable for reimbursement of

---

2. Under the definitions section of Citizens' policy, "you" is defined as "[t]he 'named insured' shown in the Declarations; and * * * [t]he spouse if a resident of the same household." Further, such section stated that "[f]or purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased: 1. Under a written agreement to that person; and 2. For a continuous period of at least 6 months."

3. There is some discrepancy in the record about the dollar amount actually paid by Citizens to Empire. In its complaint, Empire stated that it had been reimbursed by Citizens for $23,600.52, and that same figure was alleged by Citizens in its counterclaim. We adopt the $23,060.62 figure, however, because it is the figure the hearing justice used in her order and final judgment granting summary judgment for Empire.

all attorneys' fees incurred by Empire in defending BMW Financial. In response, Citizens filed a counterclaim against Empire seeking repayment of the $23,060.62 it previously had paid Empire, alleging that Empire, as primary insurer, solely was responsible for BMW Financial's defense costs.

Thereafter, the parties filed cross-motions for summary judgment, and both motions were heard on August 18, 2009. Citizens argued that its policy's "other insurance" provision directly conflicted with Empire's "other insurance" provision; therefore, requiring Citizens and Empire to provide coverage on a "pro-rata by limits basis" pursuant to the dictates of *Hindson v. Allstate Insurance Co.*, 694 A.2d 682 (R.I.1997), and *Brown v. Travelers Insurance Co.*, 610 A.2d 127 (R.I.1992). In response, Empire argued that the clear language of Citizens' policy revealed that it was obligated to provide primary coverage. Thus, according to Empire, Citizens' reliance on *Hindson* and *Brown* was misplaced because there was no conflict between the two insurance policies and, as a result, there was no need for a *pro-rata* apportionment of defense costs. The hearing justice agreed and determined that Citizens' policy expressly provided for primary-insurance coverage, while Empire's policy clearly provided only excess coverage. Accordingly, she granted Empire's motion for summary judgment and denied Citizens' motion for the same. On April 14, 2010, a final judgment was entered in favor of Empire for $75,895.30,[4] and Citizens timely appealed on April 21, 2010.

## II

### Standard of Review

▮▮▮▮ This Court reviews the grant of a motion for summary judgment *de novo*, "employing the same standards and rules used by the hearing justice." *Generation Realty, LLC v. Catanzaro*, 21 A.3d 253, 258 (R.I.2011) (quoting *Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I.2009)). We will affirm the grant of summary judgment "[i]f we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law * * *." *Pereira v. Fitzgerald*, 21 A.3d 369, 372 (R.I.2011) (quoting *Lacey v. Reitsma*, 899 A.2d 455, 457 (R.I.2006)); *see also* Rule 56(c) of the Superior Court Rules of Civil Procedure.

## III

### Discussion

▮▮▮▮ The dispositive issue in this case is whether, and to what extent, Empire and Citizens owed BMW Financial a duty to defend in the underlying civil action. Resolving this issue requires us to engage in a *de novo* review of both Citizens' and Empire's insurance policies. *See Metro Properties, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 934 A.2d 204, 208 (R.I.2007). It is well established that in "interpreting the contested terms of [an] insurance policy, we are bound by the rules established for the construction of contracts generally." *Id.* (quoting *Zarrella v. Minnesota Mutual Life Insurance Co.*, 824 A.2d 1249, 1259 (R.I.2003)). To that end, "[w]hen the terms of an insurance policy are unambiguous, this Court will give the words, when read in conjunction with the entire policy, their plain and ordinary meaning." *Id.* "If, however, the

---

4. This figure represented the total amount of defense funds expended by Empire, $98,955.92, less the $23,060.62 Citizens already had reimbursed Empire for.

policy terms are ambiguous or capable of more than one reasonable meaning, the policy will be strictly construed in favor of the insured and against the insurer." *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I.1995).

Citizens asserts that the plain language of its "other insurance" provision provided that "coverage for a vehicle not owned by the named insureds is excess over any other collectible insurance," and, because the 2001 BMW was leased to MCB, and not the Brownells, the vehicle was not owned by the named insureds.[5] Therefore, according to Citizens, its policy provided BMW Financial with excess coverage and not primary coverage. As such, Citizens reasons, its "other insurance" provision directly conflicted with Empire's like provision, requiring a *pro-rata* apportionment of defense costs. Consequently, Citizens argues that the hearing justice erred in determining that it was the primary insurer of BMW Financial and, thus, was required to bear all of BMW Financial's defense costs.

In contrast, Empire argues that Citizens' policy unambiguously provided primary coverage to BMW Financial, while Empire's policy unambiguously provided excess coverage. In so arguing, Empire points to Citizens' lease endorsement of BMW Financial as an additional insured, which under Empire's interpretation, "specifically provide[d] primary coverage to the leased BMW that is at issue in this case." This lease endorsement, according to Empire, "trumped" Citizens' "other insurance" provision, thereby eliminating any conflict between Citizens' and Empire's policies. To support this argument, Empire reasons that, if Citizens' "other insurance" provision applied as Citizens suggests, the lease endorsement would be rendered "a nullity" and the listing of BMW Financial as an additional insured and loss payee "would [have been] an empty exercise." Thus, Empire contends that the two insurance policies can and should be considered together to reach the conclusion that Citizens was the intended primary-insurance carrier and Empire the mere excess carrier.

■■■ Citizens insists that this dispute can be resolved simply by a literal interpretation of the plain language of its "other insurance" provision. We do not agree. This Court consistently has declared that central to the resolution of an insurance-coverage dispute is the interpretation of the policy as a whole. *See Irene Realty Corp. v. Travelers Property Casualty Co. of America*, 973 A.2d 1118, 1122 (R.I.2009); *Mallane*, 658 A.2d at 20. We will not read a policy's terms in isolation; instead, we read the policy "in its entirety, giving words their plain, ordinary, and usual meaning." *Irene Realty Corp.*, 973 A.2d at 1122 (quoting *Mallane*, 658 A.2d at 20). Thus, in this case, we will not limit our reading of Citizens' policy to its "other insurance" provision. Moreover, we will not apply the policy as written if doing so would render the coverage provided illusory. *See Employers Mutual Casualty Co. v. Pires*, 723 A.2d 295, 299 (R.I.1999) (stating that "absent any ambiguity in the policy's language, we will apply the exclusion

---

**5.** Citizens highlights this argument by stating: "It is the actual ownership of the subject BMW that creates the conflict between the Citizens and Empire policies." To clarify, Citizens parses out the language in its "other insurance" provision by supplementing it so that it reads: "any insurance we [Citizens] provide for a vehicle you [Marilyn and Malcolm Brownell] do not own shall be excess over any other collectible insurance." Then, it points to the policy's definition of ownership of a vehicle as a vehicle leased by a person "[u]nder a written agreement to that person," to reach the conclusion that the Brownells are not the "owners" of the 2001 BMW.

as written unless doing so would render illusory the coverage provided"). Here, reading Citizens' policy as it suggests we should would render the coverage, insofar as BMW Financial is concerned, illusory. *See Pressman v. Aetna Casualty and Surety Co.*, 574 A.2d 757, 759 (R.I.1990) (holding that a narrow definition in an insurance policy rendered coverage illusory because "[i]n effect * * * [it] would preclude coverage in almost any circumstance").

▮ That much is clear from our reading of the plain language of the additional insured lessor endorsement. That endorsement provided the following: "Any liability and any required no-fault coverages afforded by this policy for 'your leased auto' also apply to the lessor named in this endorsement as an additional insured." This coverage was subject to, and limited by, the provision defining "your leased auto," as "an auto shown in the Declarations or in this endorsement which you lease for a continuous period of at least six months under a written agreement which requires you to provide primary insurance for the lessor." In other words, coverage was provided to BMW Financial, as the additional insured specified in the declaration, specifically for the 2001 BMW only where "you"—a named insured—leased such a vehicle. Here, however, a named insured did not lease the 2001 BMW; instead, as Citizens emphasizes, MCB—not the Brownells—was the lessee. Therefore, a literal reading of Citizens' policy would result in no coverage—primary or excess—for BMW Financial. BMW Financial then would be uncovered in spite of its explicit endorsement as an additional insured. We will not read Citizens' policy to render the additional insured lessor endorsement meaningless; we believe that such a result would be unreasonable and unconscionable. *See Campbell v. Norfolk & Dedham Mutual Fire Insurance Co.*, 682 A.2d 933, 936 (R.I.1996) (refusing to read an insurance policy to "lead to unreasonable results" and render coverage illusory); *Pressman*, 574 A.2d at 759 (holding that it was "against public policy to apply such a narrow definition of the term 'premises' to the facts of [the] case because an application of [the] definition render[ed] the * * * coverage illusory"); *cf. Pires*, 723 A.2d at 299 (holding that enforcing an insurance policy's exclusion would "not cause the general-liability-coverage provisions to become illusory or nugatory" because the exclusion at issue "constituted only a subset of the universe of potential property damage").

▮ "The test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean." *Pressman*, 574 A.2d at 760 (quoting *Elliott Leases Cars, Inc. v. Quigley*, 118 R.I. 321, 326, 373 A.2d 810, 812 (1977)); *see also Campbell*, 682 A.2d at 935; *Jerry's Supermarkets, Inc. v. Rumford Property and Liability Insurance Co.*, 586 A.2d 539, 540 (R.I.1991). We conclude, in light of the additional insured lessor endorsement, that the ordinary reader and purchaser of this policy would have interpreted Citizens' policy to provide BMW Financial primary coverage under the circumstances as presented here. Because we find Citizens to have been the primary insurer of BMW Financial and Empire indisputably provided excess coverage, there is no conflict between the two policies' "other insurance" provisions. Thus, it is unnecessary, and would be improper, to resort to a *pro-rata* apportionment of liability. *See Irene Realty Corp.*, 973 A.2d at 1123 (holding that "the *pro rata* rule regarding apportionment of liability should be resorted to only if the two insurance policies at issue are *actually in conflict* "); *Ferreira v. Mello*,

811 A.2d 1175, 1178 (R.I.2002) ("This Court will not resort to a pro rata rule when the insurance policies do not conflict."). Instead, Citizens, as primary insurer, was under a primary duty to defend BMW Financial in the underlying action; and, therefore, is responsible for all the defense costs expended by Empire in defending BMW Financial on Citizens' behalf. *See Liberty Mutual Insurance Co. v. Harbor Insurance Co.*, 603 A.2d 300, 303 (R.I.1992) (holding "that when a conflict regarding the order of payment arises between an umbrella policy and a primary policy containing an 'other insurance' clause, liability of the umbrella carrier does not attach until the primary policy is exhausted"); 14 *Couch on Insurance* 3d § 200:38 (2005) (stating that, "[a]s a general rule, a true-excess insurer is not obligated to defend its insured until all primary insurance is exhausted or the primary insurer has tendered its policy limits").

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

Justice GOLDBERG did not participate.