Alexander E. APONIK, Jr.

v.

Joseph A. LAURICELLA et al.

No. 2003–150–Appeal.

Supreme Court of Rhode Island.

March 29, 2004.

Raymond Pezza, Esq., Providence, for Plaintiff.

Douglas A. Giron, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendants, Joseph A. Lauricella and Charlene J. Thiel (defendants), appeal a Superior Court order confirming an arbitration award in favor of the plaintiff, Alexander E. Aponik, Jr. (Aponik or plaintiff), and granting costs and attorneys' fees to the plaintiff. The defendants contend that the hearing justice erred in denying their motion to vacate, failing to stay the enforcement proceedings, and awarding attorneys' fees and prejudgment interest to the plaintiff. In addition, the defendants argue that the hearing justice erred in confirming the award because the arbitrator ignored substantial evidence when he rendered the award.

This case came before the Supreme Court for oral argument pursuant to an

order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of the litigants and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we summarily affirm the order confirming the arbitration award, but reverse the award of costs and attorneys' fees.

### Facts and Travel

The defendants signed a purchase and sale agreement for a vacant lot on Widow Sweets Road in Exeter, Rhode Island, in February 1996. On March 18, 1996, defendants entered into a contract with Aponik for the construction of a house on the lot for the total sum of $146,900. The contract provided that Aponik would begin work "as soon as practical," and that the construction shall be completed "as expeditiously as possible." The defendants closed on the property in May 1996, and construction began in July 1996.

The quality of the workmanship, timeliness, and payments due under the contract are the source of this dispute. Aponik alleged that there were many changes and that extras were added to the contract, none of which were in writing, as required by the contract terms. He further asserted that defendants never complained about the quality or timeliness of his work until they provided him with a punch list in February 1997. The defendants maintained that, among other defects, the walls were erected in the wrong place, the house was not properly oriented, the road was in the wrong location, and some trees and fill should have been removed.

On or about April 10, 1997, Aponik requested final payment because, in his opinion, construction on the house was 99 percent complete. The defendants, asserting that the project was only 75 to 80 percent complete, withheld a balance of $36,496.53 from the total contract price.[1] The defendants assert that, after a meeting with Aponik to resolve pending issues proved unsuccessful, Aponik abandoned the job. The arbitrator, however, found that he had been discharged.

The previous day, on April 9, 1997, with opportune clairvoyance, Aponik filed a notice of intention to claim a lien on the property, pursuant to G.L.1956 § 34–28–4, for work and materials totaling $47,800. He then filed a notice of *lis pendens* in the land evidence records in the town of Exeter, and a petition to enforce a mechanics' lien in the Washington County Superior Court on August 1, 1997.

On September 19, 1997, defendants filed a "Statement of Claim, Affirmative Defenses, and Other Defenses" wherein they counterclaimed that plaintiff breached the construction contract by failing to construct the residence in a timely fashion, failing to employ professional methods, causing defects in the work, and failing to adhere to plans and specifications. The parties then engaged in discovery in anticipation of a December 1998 trial.

Before trial, however, the parties entered into a stipulation submitting their case to binding arbitration. The stipulation identified the parties' mutually selected arbitrator and specified that "[e]ach party shall pay one-half of the arbitrator's fees for services rendered."

---

1. Notwithstanding the lack of written modifications, as required by the terms of the contract, the arbitrator found that the parties, by their conduct, had agreed to extras totaling $2,539.29. Although plaintiff asserted that

defendants had paid only $102,203.48 of the original contract, leaving a balance of $44,696.52, the arbitrator found that defendants had paid a total of $112,942.76.

Because of discovery disputes and requests for continuances, testimony in the arbitration did not commence until January 5, 2001. After numerous hearing dates and the submission of memoranda, the arbitrator issued a decision on October 23, 2002. The arbitrator determined that when Aponik was discharged, the house was 85 to 95 percent complete. Finding that defendants' expert witness lacked credibility, the arbitrator denied their counterclaims for alleged defects and code violations. The witness, a social friend, had never served as an expert witness in a construction case and had not estimated a job since 1989. After crediting defendants for expenses incurred for costs in debris removal, cleanup, interior painting, purchasing materials, and mortgage penalties assessed as a result of delays for which he held both parties responsible, the arbitrator awarded plaintiff "$27,984.00 plus interest and costs."

On November 4, 2002, Aponik filed a motion to enforce the arbitration award. In addition, he requested that the Superior Court award costs and attorneys' fees pursuant to § 34–28–19[2] of the mechanics' lien statute. Section 34–28–19 allows the court, in its discretion, to award "[t]he costs of the proceedings" and "attorneys' fees to the prevailing party." Along with his motion to confirm the arbitration award, Aponik filed an affidavit detailing attorneys' fees and expenses totaling $15,894.35. In response, defendants filed motions seeking to vacate or modify the arbitrator's award, and requesting a stay of the proceedings. In addition, they filed a motion addressed to the arbitrator to vacate, modify, and/or clarify the interest award.

The various motions were heard in the Superior Court on November 15, 2002, as a result of which the matter was referred back to the arbitrator for "consideration and ruling on defendants' motion addressed to the Arbitrator to vacate, modify, or clarify the interest award." Both plaintiff's motion to confirm and defendants' motion to vacate the arbitration award were denied without prejudice.

In a "Supplemental Decision and Award" dated December 20, 2002, the arbitrator awarded Aponik prejudgment interest, stating, "[w]hether this decision was rendered pursuant to the mechanic's lien statutes or the arbitration statutes, it is within the discretion of the Arbitrator to award interest." The arbitrator cited this Court's decision in *Paola v. Commercial Union Assurance Companies*, 461 A.2d 935 (R.I.1983), to support the proposition that "arbitrators should add prejudgment interest to their awards unless the parties specifically provide otherwise by agreement." As a result, the arbitrator awarded interest accruing from January 5, 2001, the commencement of the arbitration hearing, "at the rate of 12% per year or 24% interest." The award of interest "modified" the original award from $27,984 to reflect prejudgment interest in the sum of $6,716.16, for a total of $34,700.16. The supplemental award was silent about costs.

Pursuant to the modified award, Aponik renewed his motion to confirm the arbitration award and his request for costs and attorneys' fees. Likewise, defendants again moved to vacate or modify the award and to stay enforcement of the award.

At the hearing on the motions, the parties disputed whether this case was governed by the mechanics' lien statute or by the Arbitration Act. The hearing justice

---

2. The plaintiff originally referred to the wrong statute, but filed a "Corrected Motion" on

November 19, 2002.

noted that "this is not a court ordered arbitration. This is where the parties agreed * * * [to] an independent arbitrator and binding arbitration." The hearing justice affirmed the arbitrator's award and granted plaintiff's motion for costs and attorneys' fees. On February 12, 2003, he entered an order confirming the arbitrator's award of $27,984, plus prejudgment interest of $6,716.16. In addition, he awarded costs and expenses of $13,194.35,[3] bringing the total award to $47,894.51 for plaintiff. The defendants timely appealed.

## Discussion

The threshold issue to be resolved is whether this case is governed by The Rhode Island Arbitration Act, G.L.1956 chapter 3 of title 10, or by the mechanics' lien statute, chapter 28 of title 34. The defendants, on appeal, argue the former, maintaining that the stipulation submitting the case to "binding arbitration" removed the case from the nature of a mechanics' lien proceeding and converted it into a simple "garden variety binding agreement to arbitrate the underlying claims of the parties" in connection with a contract dispute. Thus, they assert, the hearing justice erred by failing to consider their motion to vacate and to stay enforcement of the award; by confirming the award without accepting additional submissions or conducting further hearings; and by awarding attorneys' fees to plaintiff.

Aponik counters by stating that at no time did he ever agree to waive his rights under the mechanics' lien statute, or waive his rights to fees and costs. He notes that before the stipulation agreeing to arbitrate was executed, his counsel advised the arbitrator that "this is a Mechanic's Lien case involving a contract for Plaintiff to con-

struct the residence for Defendant." This was not an arbitration pursuant to a contractural provision, he argues; rather, the parties agreed to arbitrate the matter in lieu of a trial. The award of costs and attorneys' fees, therefore, was within the court's discretion under the mechanics' lien statute, according to Aponik.

■■■■ Generally, "the role of the judiciary in the arbitration process is 'extremely limited.' " *Purvis Systems, Inc. v. American Systems Corp.,* 788 A.2d 1112, 1114 (R.I.2002) (quoting *Romano v. Allstate Insurance Co.,* 458 A.2d 339, 341 (R.I.1983)). An arbitration award may be overturned only if the award was "irrational or if the arbitrator manifestly disregarded the law." *Purvis Systems, Inc.,* 788 A.2d at 1115 (citing *Prudential Property and Casualty Insurance Co. v. Flynn,* 687 A.2d 440, 442 (R.I.1996)). Consequently, when reviewing arbitration awards, "[a]bsent a manifest disregard of the contractual provisions, or a completely irrational result, the courts have no authority to vacate the arbitrator's award." *Warner v. Aetna Casualty and Surety Co.,* 624 A.2d 304, 305 (R.I.1993) (per curiam) (quoting *State v. National Association of Government Employees Local No. 79,* 544 A.2d 117, 119 (R.I.1988)).

We recently held that "[t]o successfully challenge an arbitration award, the claimant has the burden of demonstrating that the arbitrator has exceeded his powers sufficient to warrant setting aside the award." *Ricci v. Marandola,* 800 A.2d 401, 404 (R.I.2002) (per curiam). Moreover, § 10–3–12 of the Arbitration Act sets forth additional—yet narrow—grounds on which an arbitration award must be vacated:

3. The plaintiff acknowledges that his share of the arbitrator's fee, $2,700, should be deduct-

ed from his claim of $15,894.35.

"(1) Where the award was procured by corruption, fraud or undue means.

"(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.

"(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.

"(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

■ We employ such a limited review in order to preserve the efficacy of the arbitration process and the policy that underlies this process, namely, judicial economy and finality of decisions. Preserving the integrity of the arbitration process "depends, therefore, upon a strong public policy in favor of the finality of arbitration awards. Generally, parties who have contractually agreed to accept arbitration as binding are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law." *Flynn,* 687 A.2d at 441. In keeping with this policy, we have remarked that our standard of review requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Purvis Systems, Inc.,* 788 A.2d at 1115 (quoting *Westminster Construction Corp. v. PPG Industries, Inc.,* 119 R.I. 205, 211, 376 A.2d 708, 711 (1977)).

■ We agree with defendants that these proceedings were conducted under the provisions of the Arbitration Act and not the mechanics' lien statute. Although not specifically articulated by the hearing justice, he reached the same conclusion when he responded to an entreaty by defense counsel by stating, "this is [what] the parties agreed upon, * * * an independent arbitrator and binding arbitration. I mean binding means binding." This was further evidenced when he interrupted plaintiff's counsel, who was insisting that the case was a mechanics' lien case, and stated, "I understand. I've heard enough. That's it. That's my decision."

■ The defendants assert that the hearing justice erred by failing to stay the proceedings to allow them time to compile a record to support their motion to vacate the award. Under § 10–3–15, "[t]he court may make an order, to be served with the notice of the motion, staying the proceedings of the adverse party to enforce the award." The defendants assert that motions to vacate an award proceed like other civil actions, and that "the party opposing enforcement is entitled to a full and fair opportunity to litigate the grounds supporting vacation or modification of the award." Thus, they maintain the hearing justice erred by denying their request for a two-week continuance to submit a memorandum.

■ The defendants ascribe further error to the hearing justice's granting Aponik's motion to enforce without considering or ruling on their motion to vacate. Recognizing that under Rhode Island law, the court may vacate or modify an arbitration award if it " 'manifestly disregards the applicable contract provisions,' " *Aetna Casualty & Surety Co. v. Grabbert,* 590 A.2d 88, 92 (R.I.1991), they cite four instances in which they allege the arbitrator manifestly disregarded the contract provisions.

We are unpersuaded by defendants' submissions. The record, on the con-

trary, indicates that the arbitrator did not manifestly disregard the contract. Rather, he carefully considered the evidence before him, including the testimony of both parties. He particularly cited the testimony of the building inspector for the Town of Exeter, who issued the certificate of occupancy. The building official physically inspected the property and reviewed defendants' punch list, but found no code violations. Also of significance was the testimony of defendants' construction expert. The arbitrator noted that he never had testified before as an expert in any forum, he had not reviewed the building code within the past five or six years, he relied upon a treatise published in 1964, he had not estimated a job since 1989, and he based his estimates upon cost determinations obtained informally from friends. We detect no error in the hearing justice's confirmation of the arbitrator's award.

■ Nor do we discern error in the hearing justice's failure to stay enforcement of the award. In reviewing an arbitrator's award, the Superior Court need not stay enforcement proceedings unless "sufficient cause is shown to the court." *Town of Coventry v. Turco*, 574 A.2d 143, 146 (R.I.1990). Moreover, the reviewing court's discretion to stay enforcement proceedings is further constrained by § 10–3–11 which provides that "any party to the arbitration may apply to the court for an order confirming the award, and thereupon the court *must* grant the order confirming the award unless the award is vacated, modified or corrected * * *." (Emphasis added.) In this case, the hearing justice exercised his statutory authority, confirmed the arbitrator's modified award, and thereby implicitly denied de-

fendants' motions to vacate and for stay of enforcement.

■ Finally, defendants argue that the hearing justice erred by granting Aponik's request for costs and attorneys' fees.[4] In his motion for enforcement of the arbitration award, plaintiff also requested an award of costs and attorneys' fees pursuant to § 34–28–19. This section provides that in a mechanics' lien action

"[t]he costs of the proceedings shall in every instance be within the discretion of the court as between any of the parties. Costs shall include legal interest, costs of advertising, and all other reasonable expenses of proceeding with the enforcement of the action. The court, in its discretion, may also allow for the award of attorneys' fees to the prevailing party."

■ "It is well settled that attorneys' fees may not be appropriately awarded to a prevailing party absent contractual or statutory authorization." *Capital Properties, Inc. v. City of Providence*, 843 A.2d 456, 459 (R.I.2004) (quoting *Insurance Company of North America v. Kayser-Roth Corp.*, 770 A.2d 403, 419 (R.I.2001)). When the parties stipulated to submit this mechanics' lien action to binding arbitration, they thereby agreed to submit all issues thereunder to the decision of an arbitrator. The only reservation in the stipulation was that each party was to pay one-half the arbitrator's fees for services rendered.

■ We agree with plaintiff's assertion that he never agreed "to waive his rights under the Mechanic's Lien Statute 34–28–1 et seq. or waive his rights to fees and costs." He did, however, agree to submit

---

4. The order grants "costs and expenses as submitted by Plaintiff's attorney in the amount of $13,194.35."

such rights to binding arbitration. He also misperceives the role of the arbitrator when he says that the "sole purpose of the stipulation was to have an agreed upon Arbitrator * * * determine the facts of the dispute between the parties." The purpose of arbitration is dispute resolution, not merely fact-finding. "Parties voluntarily contract to use arbitration as an expeditious and informal means of private dispute resolution, thereby avoiding litigation in the courts." *Purvis Systems, Inc.*, 788 A.2d at 1118 (quoting *Grabbert*, 590 A.2d at 92).

■■■ Any claim that may have been available to plaintiff under the mechanics' lien statute was available to him through the arbitration process. We hold, therefore, that once having obtained a favorable award in the arbitration of a mechanics' lien action, the prevailing party may not seek costs and attorneys' fees under the guise of a motion to enforce the award. As we previously have stated, the judiciary has a limited role in the arbitration process. *Flynn*, 687 A.2d at 441. "Moreover, a reviewing court must confirm an arbitrator's award unless it is vacated for reasons of fraud, corruption, undue influence, or abuse of an arbitrator's authority or modified or corrected" as prescribed in §§ 10–3–12 and 10–3–14. *Balian v. Allstate Insurance Co.*, 610 A.2d 546, 550, 550 n. 4, n. 5 (R.I.1992).

Even if Aponik were entitled to costs and attorneys' fees in this case, it would have been within the exclusive discretionary province of the arbitrator to award them. This was a long arbitration involving numerous hearings over a period of four years. Clearly, the arbitrator was in a better position to exercise his discretion than was the hearing justice who had before him only motions to either confirm or vacate the award. We previously have recognized that "an arbitration award is the decision of an extra-judicial tribunal which the parties themselves have created and by whose judgment they have mutually agreed to abide." *Jacinto v. Egan*, 120 R.I. 907, 911, 391 A.2d 1173, 1175 (1978).

■■■ Moreover, if the issue of costs and attorneys' fees were properly before this Court, we would be constrained to reverse the hearing justice's award thereof. It is clear from reviewing the transcript that the hearing justice did not exercise his independent discretion; rather he simply accepted without comment plaintiff's affidavit and oral representations relating to attorneys' fees and costs. Further, it would appear from the transcript that he may have been under the mistaken impression that the arbitrator had, in fact, awarded costs and attorneys' fees when the hearing justice said:

> "It's an extensive file here. [The arbitrator] spent many hours arbitrating the case, rendered a decision. It's a binding decision, and I'm going to enforce that decision, and, you know, you take your appeal to the Supreme Court and see what they have to say about it. I'll affirm it in the amount of $47,894."

The defendants' counsel then said:

> "Your Honor, I—just so it's clear, the arbitrator did not award attorney's fees and costs. He simply awarded [$]27,000 plus—as principal amount, plus interest from January 5, 2001. The plaintiff is asking here today for the first time for fees and costs under the mechanic's lien statute."

The plaintiff's counsel attempted to interject, "That's not correct. I asked for the first motion * * *. The arbitrator award was for interest and costs. It's a mechanic's lien case. The idea of the whole statute—." To which the trial justice tersely responded with finality, "I un-

derstand. I've heard enough. That's it. That's my decision."

 As a final consideration, we address plaintiff's comment that the arbitrator's award was "for interest and costs," perhaps implying thereby that the arbitrator had indeed awarded costs, including attorneys' fees, but in an unspecified amount. We note that the original arbitration amount was for "$27,984.00 plus interest and costs." The supplemental arbitration award, however, was for "$27,984 plus prejudgment interest in the sum of $6,716.16."

The award that was confirmed and that Aponik seeks to enforce is the supplemental award that omits the grant of costs. Moreover, even if the hearing justice meant to add costs pursuant to the arbitrator's original decision, an award of costs "[does] not include attorney fees unless such fees are by a statute denominated costs or are by statute allowed to be recovered as costs in the case." *Keenan v. Vose*, 634 A.2d 866, 868 (R.I.1993) (quoting Black's Law Dictionary 346 (6th ed.1990)). If the arbitrator had meant to preserve the original award of costs under § 34-28-19, the plain language of the statute makes it clear that an award of costs does not include attorneys' fees. That section provides that "[t]he costs of the proceedings shall in every instance be within the discretion of the court." *Id.* The statute then separately provides that "[t]he court, in its discretion, may also allow for the award of attorneys' fees to the prevailing party." *Id.* The mechanics' lien statute makes clear that an award of costs and an award of attorneys' fees are distinct discretionary acts. Thus, even if the hearing justice had intended to affirm the arbitrator's award of "costs" from the original award, such costs could not have included attorneys' fees. Therefore, the hearing justice erred when he "affirmed" the arbitration award,

but, in fact, augmented it by adding costs and attorneys' fees.

### Conclusion

For the foregoing reasons, we affirm the order in part and vacate it in part. We affirm that portion of the order that confirms the arbitration award, but we vacate that portion of the order that adds costs and attorneys' fees. Thus, the record shall be remanded to the Superior Court with instructions to adjust the order to reflect the elimination of "costs and expenses * * * in the amount of $13,194.35."