**PAWTUCKET FRATERNAL ORDER
OF POLICE LODGE # 4**

v.

**CITY OF PAWTUCKET.**

No. 2004–154–Appeal.

Supreme Court of Rhode Island.

March 16, 2005.

Joseph F. Penza, Jr., Warwick, for Plaintiff.

Robert P. Brooks, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

In this case, we are asked to delve into the complicated world of compound interest as it pertains to an employee's election to purchase credits, as a result of previous military or municipal service, so that this service would count toward accumulated retirement service credits (service credits). The plaintiff, the Pawtucket Fraternal Order of Police Lodge # 4 (union), filed a grievance against the defendant, the City of Pawtucket (city), because the city had changed its method of computing the cost to purchase service credits to a method the union alleged was contrary to the parties' Collective Bargaining Agreement (CBA). After its grievance was rejected, the union filed a demand for arbitration; the arbitrator found in favor of the city. The union then filed a petition in Superior Court to vacate the arbitrator's award. The petition was duly granted. The city timely appealed to this Court.

Oral argument was held in this Court on February 3, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons stated herein, we reverse the order of the Superior Court and reinstate the arbitrator's award.

## I

### Facts and Travel

In 1989 article XVIII, § 13, entitled "Armed Service and Municipal Service Credit," was added to the CBA; it provides in pertinent part:

"An employee may elect to purchase up to four (4) years of active military service or prior municipal service within the Police Division for the purpose of accumulating retirement service credits. The cost to purchase said retirement credits shall be 10% of the employee's first year's annual earnings [with] the City compounded at 5% interest."

Initially, the city determined the cost of purchasing service credit as follows: 10 percent of the police officer's first-year base salary, plus holiday pay, would be multiplied by 105 percent; that figure then was multiplied by the number of years the officer was seeking to purchase. If the officer wished to purchase only a certain number of weeks, then the final figure would be divided by fifty-two and multiplied by the number of weeks to be purchased (original method).[1]

---

1. For example, assume the base salary for a hypothetical police officer's first year on the job was $20,000. That figure would be multiplied by 10 percent for $2,000; $2,000 then would be multiplied ·by 105 percent for $2,100. If the hypothetical officer wished to

In 2001, the same year the CBA in effect when this dispute arose was signed, this method of calculation changed, even though the language of § 13 of article XVIII remained the same. After some discussion within the city's personnel department, and with the help of a college textbook, the city's finance director and the city's personnel director determined the method the city had been using for this calculation was wrong. They concluded that the language in the CBA actually required the following cost of service credit calculations: 10 percent of the police officer's first-year gross earnings [2] compounded annually at 5 percent for the number of years he or she had worked as a police officer for the city up until the point of purchase. That number was then divided by twelve and multiplied by the number of months of service credit the officer was seeking to purchase (revised method).[3]

After two police officers were required to pay much more than had been quoted earlier, the union brought a grievance on behalf of them and "all members of the bargaining unit." On December 18, 2001, after its grievance had been denied, the union filed a demand for arbitration. In June 2002 the arbitrator heard testimony from several city and union witnesses, some of whom had been involved in the 1989 CBA negotiations. The witnesses who had been involved with the negotiations testified that they understood that the original method would be used in cal-culating service credit costs and that interest would be compounded only for the years that were being bought back. Notwithstanding the testimony presented, the arbitrator concluded the CBA was clear and unambiguous with respect to calculating the cost of service credits and, thus, past practice of the parties was irrelevant. He determined the revised method was correct and that interest should be applied from the year the employee wanted to buy back to the date of purchase.

The union filed a motion with the Superior Court to vacate the arbitrator's award. The hearing justice determined that the parties had agreed the provision in question was ambiguous and the arbitrator unequivocally erred by failing to take past practice into consideration. Accordingly, he vacated the arbitrator's award.

## II

### Discussion

 The hearing justice correctly reflected that an arbitrator's award is to be vacated only in the rarest of circumstances. It is well-settled that "the role of the judiciary in the arbitration process is 'extremely limited.'" *State of Rhode Island v. Rhode Island Alliance of Social Service Employees, Local 580*, 861 A.2d 455, 457 (R.I.2004) (quoting *Aponik v. Lauricella*, 844 A.2d 698, 703 (R.I.2004)). However, in situations in which the arbitrator has "exceeded [his] powers, or so imperfectly executed them, that a mutual,

purchase one year of service credit he would pay $2,100, regardless of when he actually purchased the credit.

2. The arbitrator concluded that the city should not include a police officer's overtime pay to determine his first-year earnings. The city has not appealed that determination and thus we need not consider it.

3. For example, using the same base salary used in footnote one for a hypothetical police officer who had been on the force for ten years at the point of purchase: 10 percent of $20,000 would be $2,000, compounded annually at 5 percent for ten years for $3,258. Thus, the hypothetical police officer would be required to spend $3,258 for one year of service credit under the revised method if he waited ten years to purchase the credit.

final, and definite award upon the subject matter submitted was not made," the court is required to vacate the award. *Id.* (quoting G.L.1956 § 28–9–18(a)(2)). "An arbitrator exceeds his * * * powers under § 28–9–18(a)(2) * * * if the award fails to 'draw its essence' from the agreement, if it was not based upon a 'passibly [*sic*] plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." *Id.* (quoting *Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee,* 770 A.2d 834, 837 (R.I.2001)).

■ As a preliminary matter, we note the hearing justice mischaracterized the parties' positions. He concluded that they had agreed that § 13 of Article XVIII was ambiguous; however, at no time during these proceedings has the city made such a concession. "[I]n the event of conflict between the language of the agreement and past practice, the language of the agreement, which represents the most direct and best evidence of the parties' intentions, must govern." [4] *Town of North Providence v. Local 2334 International Association of Fire Fighters, AFL–CIO,* 763 A.2d 604, 606 (R.I.2000) (quoting Ira F. Jaffe, *Past Practice, Maintenance of Benefits, and Zipper Clauses,* 1 Labor and Employment Arbitration, § 10.03[3] at 10–24 (Tim Bornstein et al. eds., 1998)). Here, the arbitrator concluded that the language was unambiguous and we hold the hearing justice erred in finding otherwise. *See United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

■ The hearing justice further erred when he substituted his own judgment for that of the arbitrator by concluding that the award violated the CBA. As long as the arbitrator's award drew its essence from the contract, was passably plausible and reached a rational result, the hearing justice was not permitted to overturn that decision. *Rhode Island Alliance of Social Service Employees, Local 580,* 861 A.2d at 457. The union concedes that the city's understanding of "compound interest"—specifically that in the absence of a reference to frequency it is to be assumed that compounding will be done annually—is reasonable. Nothing on the record indicates that the revised method is mathematically wrong. In addition, the arbitrator's understanding that 5 percent compounded interest should be applied from the year the employee began his employment with the police department until the date of purchase is certainly a "passably plausible" interpretation of the provision. We hold the arbitrator's adoption of the revised method was not only "passably plausible," but also it "drew its essence" from the CBA and led to a rational result.

### Conclusion

For the reasons stated herein, we reverse the order of the Superior Court and reinstate the arbitrator's award. The rec-

---

4. The union asks us to vacate our established rule, which is based on the majority view, and instead adopt the minority view that allows courts to rely directly on past practice to ascertain the parties' intent, regardless of the language in the contract, in situations in which those who negotiated the contract are available to testify when the dispute arises. Our rule allowing courts to consider past practice only if the intent of the parties is unclear from the language of the CBA is rooted in our well-settled contract law and we will not change it now. Our standard for interpreting contracts encourages parties to make their intent clear in the language of the contract and thus maintain judicial efficiency so that, if a dispute arises, the court shall confine itself to the four corners of the contract unless the court determines it to be ambiguous.

ord shall be remanded to the Superior Court.