Ashley HAHN

v.

**ALLSTATE INSURANCE COMPANY.**

No. 2009–164–Appeal.

Supreme Court of Rhode Island.

March 31, 2011.

Robert J. Quigley, Jr., Providence, Esq., for Defendant.

Neil P. Philbin, Peace Dale, Esq., for Plaintiff.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case is before the Supreme Court on appeal by Allstate Insurance Company (Allstate or defendant) from the grant of a permanent injunction against Allstate in the Providence County Superior Court. The plaintiff, Ashley Hahn (Hahn or plaintiff), sought injunctive relief against the defendant based on its refusal to submit to an appraisal of damages caused by fire at the plaintiff's house. On appeal, Allstate argues: (1) that the trial justice failed to make adequate findings of fact to support a final judgment as required by Rule 54(b) of the Superior Court Rules of Civil Proce-

dure; (2) that, although labeled "a permanent injunction," the relief was actually preliminary and mandatory in nature and as such, the trial justice failed to find the requisite "great urgency" to justify this form of relief; and (3) that the trial justice's declaration that the parties were bound to submit the dispute to appraisal was inconsistent with the facts of the case and the applicable case law. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Travel

On May 29, 2008, plaintiff's home was damaged by an accidental fire. It is undisputed that her "Deluxe Homeowner's Policy," issued by Allstate, was in effect at the time of the fire and was designed to indemnify plaintiff for loss caused by fire damage. However, a dispute arose when plaintiff and defendant's respective adjusters prepared damage estimates that varied substantially from each other. The plaintiff's insurance policy contained a provision, as required by G.L.1956 § 27–5–3, affording either party the right to have disputes over the amount of loss resolved through an appraisal process. Despite that provision, defendant refused to submit to an appraisal; defendant contended that the dispute arose because plaintiff's adjuster accounted for damages that were not the result of the fire, giving rise, Allstate feared, to an assessment of loss not attributable to the insured event. As such, defendant contended that the dispute was focusing on the scope of coverage under the deluxe policy and not on the extent of the damages caused by the fire. According to Allstate, the correct vehicle for resolution of this controversy was litigation, not the appraisal process set forth in the policy and mandated by law.

The plaintiff brought suit in Superior Court seeking declaratory and injunctive

relief, including an order for an appraisal in accordance with the policy, as well as compensatory and punitive damages for defendant's breach of contract. The defendant timely answered, asserting that the issue was the scope of coverage under the policy and not the appraisal clause. Additionally, Allstate filed a counterclaim seeking a declaratory judgment that the appraisal clause was limited "to disputes involving the cost of damages sustained, and that issues involving the existence, scope or extent of damages are not subject to the appraisal process."

The case was heard before a justice of the Superior Court on January 30, 2009. In a bench decision, the trial justice granted plaintiff's motion and ordered defendant to submit to an appraisal. The court noted that "nowhere in its pleading, nor in any argument made to the [c]ourt in response to plaintiff's application, does the defendant point to any reason to believe that any such nonfire-caused damage exists to any part, portion, or element of the insured premises." The trial justice declared that in assessing loss, "the appraisers may determine for themselves whether or not any part of such loss was the result of some cause other than the fire[.] * * * [The appraisers] are required to assess only such loss which, in their determination, is the result of damages caused by [that] fire." The trial justice ultimately held that "the issues of the amount of loss and the extent of physical damages are so inextricably intertwined that attempting to separate them in the event [of a] genuine, not postulated, dispute[ ] would frustrate the purpose of the appraisal statute." Ac-

cordingly, he ordered defendant to select an appraiser within twenty days of the order.[1]

Allstate appealed to this Court asking that the Superior Court judgment be vacated. In support of this request, defendant asserts that (1) the trial justice failed to make findings sufficient to support a final judgment as required by Rule 54(b); (2) the permanent injunction issued actually was preliminary and mandatory in nature, and was not supported by a finding of great urgency so as to justify such extraordinary relief; and (3) the trial justice's determination that the parties were bound to submit disputes to appraisal was inconsistent with the facts of the case and the applicable law.

## Analysis

### I

### Issuance of a Permanent Injunction

 In reviewing a trial justice's decision to grant or deny a permanent injunction, this Court will reverse only "when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Hilley v. Lawrence*, 972 A.2d 643, 648 (R.I.2009) (quoting *Holden v. Salvadore*, 964 A.2d 508, 512–13 (R.I.2009)). Before this Court, defendant argues that the injunction should be vacated because the trial justice failed to find that there was "no just reason for delay," which Rule 54(b) requires when a final judgment is issued for only one claim in a multi-claim action.[2] We accord great

---

**1.** According to plaintiff, the appraisal panel subsequently determined the cost of repair or replacement to the dwelling to be $190,293.43, with an actual cash value in the amount of $153,776.38. Hahn further asserts, that although the actual cash value has been paid, Allstate remains liable for the dif-

ference between the repair and/or replacement cost and the actual cost, once that figure is determined. We note that there is no evidence in the record about the appraisal or the final determination of the amount of loss.

**2.** Rule 54(b) of the Superior Court Rules of Civil Procedure provides as follows:

deference to factual findings of a trial justice sitting without a jury, and accord the same deference to mixed questions of law and fact. *Hilley*, 972 A.2d at 648. However, we review *de novo* a trial justice's rulings on questions of law. *Holden*, 964 A.2d at 513.

We are hard-pressed to comprehend Allstate's argument. Although Allstate is correct in its assertion that the trial justice did not specifically state that he found "no just reason for delay," the record discloses that plaintiff's house was partially destroyed by a fire and in immediate need of repair. Clearly, in the face of a dispute over the amount of damages, the appraisal process is but the first step in restoring plaintiff's dwelling. Moreover, Allstate appears to suggest that the breach-of-contract and bad-faith claims simultaneously should have been decided at the time that the declaratory and injunctive relief action was heard, a position it did not argue in the Superior Court. Allstate's efforts to prolong this litigation has unfairly burdened its insured. The trial justice noted that, despite repeated requests, Allstate refused to proceed to appraisal, and there was no reason to believe that defendant would comply with the policy provision absent an order to do so. We agree with this finding and reject Allstate's Rule 54(b) contentions.

Allstate further contends that, despite the trial justice's characterization that the injunctive relief was a permanent injunction, the injunction was actually preliminary and mandatory in nature because a final judgment was not issued. Consequently, defendant argues that the injunction must be vacated because it was not supported by a finding of great urgency required for such relief. This argument is unpersuasive and not supported by the record. The permanent injunction was issued after a hearing on the merits. In his bench decision, the trial justice conducted a thorough analysis of the governing case law, and he concluded that the parties were required to submit to the appraisal process, and the parties apparently did so. Thus, the Rule 54(b) judgment that subsequently issued for one of the three counts in the complaint was warranted.

## II

### Appraisal Process

■ We now turn to the ultimate issue in this case: whether Allstate was required to submit to the appraisal process. Although its argument is less than precise, Allstate appears to contend that there was some damage to plaintiff's home that was unrelated to the fire, and that Allstate feared the appraisal might include the repair costs for those uncovered damages, thereby forcing Allstate to pay for repairs not within the policy. Allstate thus contends that this dispute concerns the scope of coverage, which therefore must be resolved in the courts, rather than merely

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

the amount of the loss, a question that is properly subject to the appraisal process.

We pause to note that at oral argument, for the first time in this litigation, Allstate declared that the alleged preexisting damage to plaintiff's dwelling was water damage to the roof and the basement, which may or may not have been caused by efforts to extinguish the fire. This contention was not raised in the proceedings below nor in any of defendant's filings in this Court. In fact, in his bench decision, the trial justice characterized defendant's position on the question of other non-fire related damage as "coy," declaring that, "nowhere in its pleading, nor in any argument made to the [c]ourt in response to the plaintiff's application, [did] the defendant point to any reason to believe that any such nonfire-caused damage exists to any part, portion, or element of the insured premises."

Allstate has never disputed that plaintiff's "Deluxe Homeowner's Policy" covers direct loss caused by fire damage. Nor has defendant denied that plaintiff's home sustained fire damage. Were Allstate denying the claim in its entirety as a noncovered loss, then a genuine dispute over the scope of insurance coverage would arise, and litigation would be the appropriate avenue to resolve the claim. However, because this dispute involves the extent of damages and the amount of loss, it simply cannot be characterized as a scope-of-coverage issue. As the trial justice found, the issue of causation and amount of loss are "so inextricably intertwined that attempting to separate them in the event even of genuine, not postulated, disputes would

frustrate the purpose of the appraisal statute."

Moreover, the entire thrust of § 27–5–3—the provision governing the format of fire insurance policies—and in particular, its requirement that these policies contain an appraisal clause, is to ensure speedy and efficient resolution of claims. Allstate's attempt to circumvent the appraisal process in favor of litigation not only delays resolution of these claims but can have the effect of forcing its policyholders to make difficult choices. Faced with the prospect of costly and time-consuming litigation, policyholders might choose to accept a low settlement offer rather than undertake litigation. Such a result is unacceptable.

 In *State Farm Fire and Casualty Co. v. Licea*, 685 So.2d 1285 (Fla.1996), the Florida Supreme Court considered the distinction between a scope of coverage issue and one concerning the amount of loss. The court declared, "where there is a demand for an appraisal under [a] policy, the only 'defenses' which remain for the insurer to assert are that there is no coverage under the policy for the loss as a whole or that there has been a violation of the usual policy conditions such as fraud, lack of notice, and failure to cooperate." *Id.* at 1288. We deem this reasoning persuasive and applicable to the present case. Accordingly, we hold that unless the insurer denies coverage for the claimed loss and if the dispute is limited to the amount or extent of the loss, the parties are required to submit to the appraisal process.[3]

---

**3.** The plaintiff cited to another Florida Supreme Court case, *Johnson v. Nationwide Mutual Insurance Co.*, 828 So.2d 1021 (Fla. 2002), both in her brief and during argument. She argued the case was analogous to her present dispute and urged us to adopt Florida's reasoning. Although the analysis in *Johnson* bears some similarity to the case at bar, the dispute arose when the insurance company denied all coverage under the policy. As noted above, this is an acceptable defense to appraisal and merits litigation. Therefore, *Johnson* does not apply to the present case.

Furthermore, in the event of a genuine scope-of-coverage issue—whether caused by an ambiguity in the policy or other circumstances not present here—the issue may be litigated. However, we hold that in cases in which the insurer refuses to submit to the appraisal process in favor of litigation, the insurer must *specify with particularity* to the policyholder the alleged ambiguity in the policy and articulate why the issue is one of coverage for the loss rather than the amount of the loss. An insured is entitled to timely and adequate notice of the specifics of the dispute so that the insured may contest the denial of coverage. In the case at bar, we are of the opinion that Allstate's vague allegations of "pre-existing damage" were insufficient to put the policyholder on notice, and, as noted above, were not a genuine attempt to litigate a scope-of-coverage issue.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment and remand the papers to the Superior Court.