DECISION
This case is before the Court on Plaintiff Pawtucket Insurance Company's ("Pawtucket") Motion to Confirm Arbitration Award ("Award" or "Arbitration Decision") and Defendants Juan Larracuente and Michelle Larracuente's (collectively "Larracuentes") objection thereto. Jurisdiction is pursuant to G.L. 1956 § 10-3-11.
 FACTS AND TRAVEL
The Larracuentes are owners of a home covered by a Homeowners Policy ("Policy" or "Insurance Contract") issued by Pawtucket and in effect from January 16, 2001 to January 16, 2002. (Policy at 1.) The Policy, among other things, contains coverage for a fire loss. The Policy includes coverage for damage to the dwelling up to $120,000, for damage to personal property up to $60,000, and damage for loss of use in the amount of $24,000. (Policy at 1.)
On or about April 14, 2001, there was a fire at the Larracuentes' home. On the day of the fire, the Larracuentes' home was unoccupied. (Arbitration Decision at 2.) *Page 2 
Prior to the fire, in June 2000, the Larracuentes had moved out of their home because of a lead paint abatement process and other renovation work to be performed in their home. (Arbitration Decision at 2.) At the time of the fire, they were residing in an apartment in another dwelling they owned in Providence. Id. After the fire, the access to the home was temporarily restricted as a result of an investigation by the Fire Department concerning a potential arson claim. Id. However, the Larracuentes were cleared of responsibility in May 2001.Id.
The Larracuentes retained an attorney who contacted Pawtucket on April 23, 2001, approximately a week after the fire.Id. Pawtucket retained the services of East Coast Claim Service, an independent adjustment company, to prepare an estimate of the Larracuentes' loss. Id. East Coast Claims completed its appraisal on April 29, 2001. Id. The Larracuentes failed at that time to retain an appraiser or support their claim with any proof of loss as required by the Policy. Id.;see also Policy, Section I — Condition 2(e).
Pawtucket made repeated requests to the Larracuentes to comply with the Policy and present the required proof of loss. (Arbitration Decision at 2.) Notwithstanding the Larracuentes' failure to provide the documentation, in June 2001, Pawtucket offered the Larracuentes $26,299.18 in settlement of their dwelling claim based on the appraisal prepared by East Coast Claims.Id. In February 2002, notwithstanding the Larracuentes' continuing failure to submit a proof of loss, Pawtucket issued a check in the amount of $26,299.18 to the Larracuentes. The check was accepted under the agreement that the acceptance would not preclude a subsequent claim for disputed damages to the dwelling.Id. at 3. *Page 3 
In October 2002, the Larracuentes retained Henry DiPetrillo, a licensed public adjuster, to prepare a damage estimate. However, Mr. DiPetrillo's appraisal was not presented to Pawtucket until December 2010. (Arbitration Decision at 3.) In March 2008, the Larracuentes allowed adjuster, Christopher Troy, retained by Pawtucket, to enter the home and prepare an evaluation of the personal property loss. Id. As of then, the Larracuentes had not provided Pawtucket with the required property damage inventory and had not provided any evidence of personal property loss.Id. In October 2008, despite the lack of documentation, Pawtucket issued a check to the Larracuentes in the amount of $18,900 for the personal property loss. Id. This check was also accepted with the understanding that subsequent claim for personal property loss by the Larracuentes is not precluded.Id.
In December 2010, the parties and the Arbitrator took a view of the damaged property. Id. The Arbitrator found that the Larracuentes made no effort to weatherproof the property.Id. The Arbitrator also noted that as of December 2010, the roof had never been covered and/or repaired, and therefore, the contents of the home had been exposed to the weather conditions since the fire in April 2001. Id.
Unable to agree on an adjustment of the loss, on January 1, 2003, the Larracuentes filed a suit in Providence County Superior Court for adjustment of the fire claim. This action was dismissed, after a binding Arbitration Agreement ("Agreement") executed by the parties in December 2008. The Arbitration Agreement provided, in pertinent part: *Page 4 
 ". . . .
 1. The parties will agree on a neutral arbitrator to adjudicate the Claimants' claims, whose decision shall be binding upon both parties.
 2. Upon presentation of a claim by the Claimants, the Arbitrator shall initially determine what sums if any, are owed by Pawtucket to the Claimants under their insurance policy. Any finding by the Arbitrator will reflect:
 a. A dwelling (building) policy limit of $120,000.00, with a credit for $26,299.18 for amounts already paid to the claimants.
 b. A Personal Property policy limit of $60,000.00, with a credit for $18,900.00 for amounts already paid to the claimants.
 c. A Loss of Use policy limit of $24,000.00.
 d. A loss of other structure limit of $12,000.
 e. The arbitrator's decision shall be without prejudice as to the Claimants' right to exercise the Replacement Cost provisions of the Policy.
 3. The Arbitrator shall then review whether Pawtucket has breached its duties under the insurance policy. If the Arbitrator determines that such a breach has occurred, the Arbitrator shall determine and award damages related to the breach, including but not limited to, interest at the statutory rate from the date of the loss.
 4. If and only if, the Arbitrator determines that there has been a breach of contract, at a separate hearing the Arbitrator shall determine whether Pawtucket has acted in bad faith in resolving the claim. . . .
 . . . ." (Arbitration Agreement.)
The Larracuentes did not respond to numerous requests by Pawtucket to identify a neutral arbitrator and proceed with arbitration as per the agreement. Thus, in January 2010, Pawtucket brought the instant lawsuit to enforce the Arbitration Agreement and appoint an arbitrator. In March 2010, an order was entered appointing attorney Peter Mathieu as arbitrator.
The Agreement required the Arbitrator to "determine what sums, if any, are owed by Pawtucket to the Claimants under their insurance policy." (Agreement ¶ 2.) *Page 5 
Additionally, the Arbitrator was authorized to determine whether there had been a breach of contract by Pawtucket and, if so, to award damages, including interest at the statutory rate. (Agreement ¶ 3.)
The Arbitrator determined the Larracuentes' loss, pursuant to Dwelling Coverage of their Policy, amounted to $65,000. He made a net award to the Larracuentes in the amount of $38,700.82, because of Pawtucket's prior payment to the Larracuentes. (Arbitration Decision at 8.) The Arbitrator declined to award any further sums to the Larracuentes under coverage for personal property and loss of use/additional living expenses. Id. The Arbitrator also found that Pawtucket did not breach the Insurance Contract. Id. at 7. On the other hand, the Arbitrator found that the Larracuentes failed to abide by their duties under the Policy, failed to mitigate their losses, and "failed to properly and sufficiently submit proof . . . of their losses. . . ."Id. at 8.
Pawtucket filed a Motion to Confirm the Arbitration Award. The Larracuentes objected to the Motion. They argued that the Arbitrator erred in not adding statutory interest to his award. The Larracuentes further contend that the fact that the Arbitrator determined that the amount of the Larracuentes' loss exceeded Pawtucket's offer, and tender of payment was tantamount to a finding of breach of contract and the failure of the Arbitrator to so conclude, amounts to a manifest disregard of the law.
 STANDARD OF REVIEW
It has been well established that courts are required to review "arbitral awards under an exceptionally deferential standard[.]"N. Providence Sch. Comm. v. N. Providence Fed'n of Teachers,Local 920, Am. Fed'n of Teachers, 945 A.2d 339, 347 (R.I. 2008). Moreover, the courts have consistently recognized that judicial review of an *Page 6 
arbitration award is "extremely limited." Purvis Sys.,Inc. v. Am. Sys. Corp., 788 A.2d 1112, 1114 (R.I. 2002) (citingRomano v. Allstate Ins. Co., 458 A.2d 339, 341 (R.I. 1983)). Furthermore, our Supreme Court has established that "[d]ue to the public policy favoring the finality of arbitration awards, such awards enjoy a presumption of validity." N. ProvidenceSch. Comm., 945 A.2d at 344 (citing Pierce v. Rhode IslandHosp., 875 A.2d 424, 426 (R.I. 2005)). Our Supreme Court also held that "absent a manifest disregard of a contractual provision or a completely irrational result, the [arbitration] award will be upheld." Desjarlais v. USAA Ins. Co.,818 A.2d 645, 647 (R.I. 2003) (citing Town of N. Providence v.Local 2334 Int'l Assoc. of Fire Fighters, AFL-CIO,763 A.2d 604, 606 (R.I. 2000) (per curiam) (quoting ProvidenceTeachers Union v. Providence Sch. Bd,725 A.2d 282, 283 (R.I. 1999)). In sum, "[a]s long as the award "draws its essence" from the contract and is based upon a "passably plausible" interpretation of the contract, it is within the arbitrator's authority and our review must end." Purvis,788 A.2d at 1115 (R.I. 2002) (citing Jacinto v. Egan,120 R.I 907, 391 A.2d 1173, 1176 (1978)). Moreover, an order confirming an arbitration award must be granted "unless the award is vacated, modified or corrected, as prescribed in §§ 10-3-12 and 10-3-14." Section 10-3-11.
Our Supreme Court in Aponik v. Lauricella has expressly held that such a limited review of an arbitration award is necessary in order to "preserve the efficiency of the arbitration process and the policy that underlines this process, namely, judicial economy and finality of decisions." 844 A.2d 698, 704 (R.I. 2004). The Rhode Island Supreme Court further expressed that "[p]reserving the integrity of the arbitration process depends, therefore, upon a strong public policy in favor of the finality of arbitration awards." Id. *Page 7 
Furthermore, it has been well established that "parties who have contractually agreed to accept arbitration as binding are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law." Aponik, 844 A.2d at 704. (citing Prudential Prop. andCas. Ins. Co. v. Flynn, 687 A.2d 440, 441 (R.I. 1996)). Accordingly, in keeping with this policy, the standard of review requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." Id. (citing Purvis,788 A.2d at 1115 (internal quotation omitted)).
Our Supreme Court has established that a mistake of law, without more, does not provide a basis for vacating an arbitration award.Purvis, 788 A.2d at 1117 (citing WestminsterConstr. Corp. v. PPG Indus., Inc.,119 R.I. 205, 376 A.2d 708 (1977)). The Purvis Court continued that "awards premised on `clearly erroneous' interpretations of [a] contract have been affirmed where the result was rationally based upon the contract." Purvis, 788 A.2d at 1118 (citingJacinto, 391 A.2d at 1176).
 BREACH OF CONTRACT
The Court first turns its attention to the Larracuentes' contention that Pawtucket breached its Insurance Contract with them. The Larracuentes claim that Pawtucket's tender of the amount of $26,299.18 in February of 2002 was "conclusively" a breach of the Insurance Contract in light of the Arbitrator's finding that the total dwelling loss amounted to $65,000. Notably, the Policy requires that where the parties fail to agree on the amount of loss, their differences be submitted to appraisal. See
Policy, Section I-Condition 6. The appraisal process, like arbitration, is a dispute resolution alternative to litigation. The outcome is binding on the parties. G.L. 1956 § 27-5-3 requires fire *Page 8 
policies issued in Rhode Island to contain an appraisal clause. Our Supreme Court held in Hahn v. Allstate Ins. Co. that the appraisal clause is necessary to ensure "speedy and efficient resolution of claims." 15 A.3d 1026, 1030 (R.I. 2011). "[U]nless the insurer denies coverage for the loss and if the dispute is limited to the amount or extent of the loss, the parties are required to submit to the appraisal process." Hahn, 15 A.3d at 1030. Thus, it is evident that both the law and the Policy terms contemplate the possibility that disputes may develop concerning the amount of a loss and make detailed provisions for the resolution of such disputes. It can hardly be suggested that an insurer who resorts to policy procedures for the resolution of such disputes, as the Arbitrator found Pawtucket did, breaches the contract simply because it is eventually determined that it underestimated the amount of loss. Analogously, our Supreme Court has held, in the context of a disputed uninsured motorist claim, that where arbitration is a contractually agreed upon method for resolving disputes, a party who submits to arbitration has not breached the contract.Skaling v. Aetna Ins. Co., 742 A.2d 282, 291 (citingPrudential, 687 A.2d 440, 441 (R.I. 1996)).
Under the circumstances of this case — particularly the Arbitrator's findings that Pawtucket, in an attempt to adjust the Larracuentes' claim, complied with the Policy requirements and that the Larracuentes did not — the arbitration by which the dispute was resolved should properly be considered a substitute for the appraisal process called for by the Insurance Contract.
As noted previously, the Arbitrator concluded that the Larracuentes failed to comply with the terms of their Policy. (Arbitration Decision at 8.) The Arbitrator found that despite repeated requests by Pawtucket, the Larracuentes failed to submit *Page 9 
documentation or proof of their alleged losses. A dwelling repair estimate was partially submitted by the Larracuentes in December 2010, while the claim was being arbitrated.Id. at 3. Furthermore, the Larracuentes failed to mitigate their losses in that the home was left vacant for years following the loss, with no effort made to secure the home from exposure to the elements. (Arbitration Decision at 8.)
On the other hand, the Arbitrator concluded that Pawtucket complied with its duties under the Policy and "made every effort to properly evaluate the damage" resulting from the fire.Id. at 7. He found that "despite the [Larracuentes'] repeated failure to comply with the policy," Pawtucket proceeded with efforts to estimate, adjust and pay the Larracuentes' claims. Id.
In short, the record reveals a more than ample basis for the Arbitrator's conclusion that Pawtucket had not breached the Insurance Contract. Furthermore, the Arbitrator was correct in deciding that the mere fact that the amount of the Larracuentes' building loss was determined to be greater than the payment tendered by Pawtucket did not dictate the conclusion that Pawtucket breached the Insurance Contract. See Skaling, 742 A.2d at 291.
 PREJUDGMENT INTEREST
The Larracuentes also argue that the Arbitrator was required to award prejudgment interest regardless of whether or not there was a breach of contract by Pawtucket.
Rhode Island Law requires that "[i]n any civil action in which a verdict is rendered . . . for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from *Page 10 
the date the cause of action accrued." G.L. 1956 § 9-21-10. Our Supreme Court has also held that Section 9-21-10 applies to judgments in breach of contract actions, and has consistently ruled that plaintiffs may recover interest in a breach of contract case.Jolicoeur Furniture Co., Inc., et al. v Baldelli,653 A.2d 740 (R.I. 1995) (citing Aiello Constr.,Inc. v. Nationwide Tractor Trailer Training and PlacementCorp., 413 A.2d 85, 89 (R.I. 1980)). As a general rule, interest awarded as damages in a contract action runs from the date when the right to recover on the claim became vested or accrued, which is ordinarily the date of the breach or the date when payment was due under the contract. 25 Samuel Williston Richard A. Lord, ATreatise on the Law of Contracts § 66:112 (4th ed.); seealso Zimmerman v. Bogoff, 524 N.E.2d 849, 856 (Mass. 1988).
Here, as stated above, Pawtucket did not breach its Insurance Contract with the Larracuentes. Pawtucket complied with all the requirements set forth in the Policy. Notwithstanding the Larracuentes' failure to present the required documentation for proof of loss, Pawtucket issued a check to the Larracuentes for their dwelling loss, based on the appraisal performed by East Coast Claims. Subsequently, Pawtucket also issued a check to the Larracuentes for their personal property loss. Both checks were accepted by the Larracuentes under the stipulation that the acceptance of the checks would not preclude subsequent claim for disputed damages to the dwelling. Pawtucket was entitled, under the terms of the Insurance Contract, to insist that its insureds, the Larracuentes, fulfill policy conditions and to submit any dispute over the amount of the loss to appraisal for resolution. It is apparent from the findings of the Arbitrator that the Larracuentes short-circuited the process by the failure on their part to comply with Policy requirements and by prematurely filing suit. As noted previously, the damage estimate prepared by the *Page 11 
Larracuentes' adjuster was not turned over to Pawtucket until December 2010, when arbitration was finally underway. (Arbitration Decision at 3.)
It is clear, therefore, on the facts found by the Arbitrator, that since no breach had occurred, no cause of action accrued and, thus, there was nothing to trigger the entitlement to interest under Section 9-21-10. Moreover, the entitlement to statutory prejudgment interest stems from award of "pecuniary damages." Section 9-21-10. However, the Arbitrator, in the case at hand, expressly declined to award damages to the Larracuentes. (Arbitration Decision at 8.)
The Arbitrator's determination that Pawtucket owed the Larracuentes an additional $ 38,700.82 under the policy for their dwelling loss did not constitute an award of damages. See,generally, Fravala v. City of Cranston,996 A.2d 696, 707 (R.I. 2010) (where Our Supreme Court established that determination of benefits, by way of declaratory judgment, without a claim for breach of contract, did not constitute an award of damages and thus Section 9-21-10 does not apply).
For these reasons, the Arbitrator's refusal to award prejudgment interest to the Larracuentes cannot be said to be either irrational or a manifest disregard of the law. Purvis Sys., Inc.,788 A.2d at 1115. *Page 12 
 CONCLUSION
There was ample basis in the record for the Arbitrator's finding that Pawtucket did not breach its Insurance Contract with the Larracuentes. Absent a finding of breach of contract and an award of pecuniary damages, no basis existed for awarding prejudgment interest under Section 9-21-10. No basis having been established to set aside the Arbitrator's Award, the Motion to Confirm same is granted.
Counsel shall prepare an appropriate order and judgment for entry.